UNITED STATES DISTRIC COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NANDE NQADOLO and PAMELA MANGALI | ) | |
| individually and on behalf of others similarly | ) | |
| situated, | ) | |
| Plaintiffs, | ) | |
| | ) | Docket No. 1:22-cv-0XXXX (___) |
| v. | ) | |
| | ) | |
| CARE AT HOME, LLC, SUZANNE KARP | ) | |
| and DANIEL KARP, | ) | |
| | ) | |
| Defendants. | ) | FEBRUARY 10, 2022 |

## PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT

### I.     INTRODUCTION

1.     Employers must pay overtime to employees who work over forty hours in a week. 29 U.S.C. Sec. 201, *et. seq.*; C.G.S. Sec. 31-58 *et. seq.* Third-party employers of "live-in domestic service" employees have a duty to pay them overtime. 29 C.F.R. Sec. 552.109(c). In determining the number of hours worked by the live-in worker, the employee and the employer may exclude, "by agreement between themselves," the amount of sleeping time, mealtime and other periods of complete freedom from all duties. 29 C.F.R. § 552.102(a). In the case of an employee who resides on the premises, the employer "shall keep a copy of the agreement specified by § 552.102" and make, keep, and preserve a record showing the exact number of hours worked by the live-in domestic service employee. 29 C.F.R. § 552.110(b) (emphasis added). In Connecticut, this agreement must be "in writing." C.G.S. § 31-76b(2)(D).[1]

---

[1] The full text of C.G.S. § 31-76b(2)(D) reads:

Notwithstanding the provisions of this subdivision, when an individual employed by a third-party provider to provide "companionship services", as defined in the regulations of the federal Fair Labor Standards

2.     Employers must pay wages to employees for their meal breaks if that time is spent predominantly for the benefit of the employer.  *Reich v. S. New Eng. Telecomms. Corp.,* 121 F.3d 58, 64 (2d Cir.1997).  Employers of "live-in domestic service" employees must keep accurate records" showing the exact number of hours worked by the live-in domestic service employee[s]," including meals breaks that they worked through.  29 C.F.R. § 552.110(b).

3.     When a "live-in domestic service" employee's sleep period is "interrupted by a call to duty, the interruption must be counted [by the employer] as hours worked."  29 C.F.R. § 785.22(b).  "[I]f the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time."  Id. (emphasis added).

4.     "Where … an employer furnishes lodging to his employees in addition to cash wages the reasonable cost or the fair value of the lodging (per week) must be added to the cash wages before the regular rate is determined." 29 C.F.R. § 778.116. Also see United States Department of Labor, Field Assistance Bulletin No. 2015-1, December 17, 2015 ("FAB No. 2015-1"), at p 11.

5.     "[T]he reasonable cost to the employer of furnishing board, lodging, or other facilities (or the fair value thereof) must be included in the employee's [regular rate] of pay for the purposes of computing [overtime] pay." FOH § 30c01(c).

---

Act,1 is required to be present at a worksite for a period of not less than twenty-four consecutive hours, such individual and his or her employer may agree in writing to exclude a regularly scheduled sleeping period of not more than eight hours from hours worked, provided (i) adequate on-site sleeping facilities are furnished to such individual, and (ii) such individual receives at least five hours of sleep time. If the scheduled sleeping period is more than eight hours, only eight hours will be excluded. If the scheduled sleeping period is interrupted by an assignment to work, the interruption shall be counted as hours worked. If such individual does not receive at least five hours of sleep time during the scheduled sleeping period, the entire sleeping period shall be considered hours worked. The provisions of this subparagraph shall be effective on and after the effective date of the United States Department of Labor's Final Rule concerning the Application of the federal Fair Labor Standards Act to Domestic Service published in the Federal Register of October 1, 2013.

6.      Section 3(m) applies to lodging furnished by the employer as compensation to an employee regardless of whether the employer calculates charges for such lodging as additions to or deductions from wages. 29 C.F.R. § 531.29. In other words, it is not relevant for purposes of calculating an employee's wages whether the employee has received housing free of charge (additions to cash wages) or has paid rent as a deduction from a paycheck or otherwise (deductions from wages). FAB No. 2015-1, at p 13. Any contribution toward wages the consumer (or the consumer's family or household) has made, including by paying for lodging provided to the employee, may be counted toward the third party employer's wage obligation. Id. at n 13.

7.      Here, Defendants have not provided any records of the value of food, the additions to cash wages for meals provided for purposes of computing overtime will be 150 percent of the statutory minimum hourly wage for each day or $10.88 (1.5 x $7.25/hour). 29 C.F.R. § 552.100(c).

8.      Furthermore, because Defendants have not provided any records of the value of lodging, the additions to cash wages for lodging provided for purposes of computing overtime will be seven and one-half times the statutory minimum hourly wage for each week lodging is furnished, or $54.38 (7.5 x $7.25/hour). 29 C.F.R. § 552.100(d). Also see, *Mmolawa v. Diligent Enterprises, Inc.,* No. 19-CR-300 (VLB), 2020 WL 7190819, at *9 (D. Conn. Dec. 7, 2020) ("[I]n the absence of employer records of the actual cost of the food and lodging, the most the Defendants could have deducted as a credit against the minimum wage pursuant to U.S. DOL regulations was seven and a half times the federal minimum wage. 29 C.F.R. § 552.100(d)(7.5 × $7.25 per hour = $54.38 per week).").

9.      Here also, Defendants employ "live-in domestic service" employees called Home Care Assistants, a/k/a Caregivers ("HCA").  Defendants assign their HCAs to live with their clients, who require assistance caring for themselves throughout the day. Defendants' HCAs perform non-exempt tasks including assisting Defendants' clients with cooking, cleaning, bathing, etc.  Defendants assign their HCAs to work 13 hour shifts each day, with three one-hour meal breaks and eight hours for sleep each day.

10.     Defendants' HCAs are routinely interrupted during their scheduled mealtimes to assist Defendants' clients.

11.     Defendants' HCAs are frequently interrupted during the night to help Defendants' clients use the restroom or turn them over in bed to prevent bedsores. Defendants' HCAs routinely fail to get five hours of uninterrupted sleep time because of these frequent interruptions.

12.     Defendants failed to record all hours worked by their HCAs.  Defendants assign their HCAs to live with their clients, knowing their work routinely occurs at all hours of the day.  Defendants provided their HCAs with timesheets to record the interruptions to their meal breaks and sleep times. Defendants' HCAs recorded the times they are interrupted during their meals and sleep time.  Defendants do not pay their HCAs overtime for the hours they spend performing that work.  Defendants have actual and constructive knowledge that their HCAs work during their meal breaks and sleep times. Despite these reports, Defendants never accurately recorded and pay for all the hours Plaintiff and other HCAs worked.

13.     As a result, Defendants kept hundreds of thousands of dollars in wages that it should have paid to Plaintiffs and the class, all in violation of state and federal wage and hour laws.

## II.     JURISDICTION AND VENUE

14.     This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

15.     This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 since they are so related to her FLSA claims that they form part of the same case or controversy.

16. Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c) because the acts or omissions giving rise to claims in this Complaint took place in this judicial district.

## III.     THE PARTIES

17. Plaintiff, Nande Nqadolo, ("Plaintiff" or "Ms. Nqadolo") is an individual residing within this judicial district.  She worked as an HCA for Defendants from approximately March 22, 2021, to December 15, 2021.

18. Plaintiff, Pamela Mangali, ("Plaintiff" or "Ms. Mangali") is an individual residing within this judicial district. She worked as an HCA for Defendants from approximately December 7, 2015, to present date.

19. Defendant Care at Home, LLC is a corporation organized and existing under the laws of the state of Connecticut.  Its principal place of business is located at 240 Williams Street, New London, CT 06420.

20.     At all relevant times, Defendant Care at Home, LLC employed, and/or continues to employ, Plaintiffs and each of the HCAs within the meaning of the FLSA and the Connecticut Minimum Wage Act.

21.     Defendant Suzanne Karp is a member and named principal of Defendant Care at Home, LLC on Connecticut's Secretary of State Business Listings.

22.     As such, Defendant Suzanne Karp actively manages, supervises, and directs the day-to-day business affairs and operations of Defendant Care at Home, LLC.

23.     As owner and named principal of Defendant Care at Home, LLC, Defendant Suzanne Karp directly, or through her delegates, interviewed and hired personnel, determined their rates of pay and company policies, assigned duties and answered questions from employees regarding their pay.

24.     As such, Suzanne Karp acted at all times material herein directly and indirectly in the interest of  Care at Home, LLC in relation to their employees and was, and is, therefore, an employer of said employees within the meaning of the Fair Labor Standards Act.

25.     At all relevant times, Defendant Suzanne Karp, as owner and president or vice president and the managing principal of Defendant Care at Home, LLC, has been "ultimate responsible authority" within Care at Home, LLC "to set the hours of employment" and to "pay wages" as to the named Plaintiff and all of Defendants' HCAs and is therefore "the specific cause of the wage violation" alleged within the meaning of the Connecticut Minimum Wage Act.

26.     Defendant Daniel Karp is a member and named principal of Defendant Care at Home, LLC on Connecticut's Secretary of State Business Listings.

27.     As such, Defendant Daniel Karp actively manages, supervises, and directs the day-to-day business affairs and operations of Defendant Care at Home, LLC.

28.     As owner and named principal of Defendant Care at Home, LLC, Defendant Daniel Karp directly, or through his delegates, interviewed and hired personnel, determined their rates of pay and company policies, assigned duties and answered questions from employees regarding their pay.

29.     As such, Daniel Karp acted at all times material herein directly and indirectly in the interest of  Care at Home, LLC in relation to their employees and was, and is, therefore, an employer of said employees within the meaning of the Fair Labor Standards Act.

30.     At all relevant times, Defendant Daniel Karp, as owner and president or vice president and the managing principal of Defendant Care at Home, LLC, has been "ultimate responsible authority" within Care at Home, LLC "to set the hours of employment" and to "pay wages" as to the named Plaintiff and all of Defendants' HCAs and is therefore "the specific cause of the wage violation" alleged within the meaning of the Connecticut Minimum Wage Act.

31.     At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

32.     Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

33.     Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C.§216(b). The named Plaintiffs' written consent are attached hereto and incorporated herein by reference.

## IV.     LEGAL PRINCIPLES

34.     Employers must pay overtime to their non-exempt workers who work over 40 hours in a work week. 29 U.S.C. Sec. 201, *et seq*.; C.G.S. Sec. 31-58, *et seq*.

35.     Employers must pay wages during an employee's meal breaks if the employee's mealtime is spent predominantly for the benefit of the employer. *Reich v. S. New Eng. Telecomms. Corp.,* 121 F.3d 58, 64 (2d Cir.1997); 29 C.F.R. Sec. 785.19 and 29 C.F.R. Sec. Sec. 552.102.

36.     Defendants' HCAs are routinely interrupted during their scheduled mealtimes to assist Defendants' clients.

37.     Defendants' HCAs are frequently interrupted during the night to help Defendants' clients use the restroom or turn them over in bed to prevent bedsores. Defendants' HCAs routinely fail to get five hours of uninterrupted sleep time because of these frequent interruptions.

38.     Employers have a "non-delegable" duty under the FLSA to maintain accurate records of its employees' hours.  *Kuebel v. Black & Decker Inc*., 643 F.3d 352, 363 (2d Cir. 2011) (citing 29 U.S.C. § 211(c)); *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir. 1959) (Friendly, J) (employers cannot discharge their duty of accurate record keeping and appropriate payment to their employees).

39.     "[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to

properly record or claim his overtime hours." *Kuebel,* 643 F.3d at 363; *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir.1998).

40.     Employers are responsible for paying overtime even when employees do not accurately record their time.  *See Kuebel*, 643 F.3d at 363 ("[T]he fact that an employee is required to submit his own timesheets does not necessarily preclude him from invoking *Anderson's* standard where those records appear to be incomplete or inaccurate."); *also McGrath v. Cent. Masonry Corp*., 2009 U.S. Dist. LEXIS 94870, *17 (D. Colo. Sept. 29, 2009) ("The burden to maintain accurate records falls on the employer regardless of whether the employee is responsible for recording his own hours on a time sheet. … Indeed, the Supreme Court's reasoning in *Anderson* makes it clear that an employer should not benefit from its own failure to maintain an adequate and accurate record-keeping system.").

41.     "Where … an employer furnishes lodging to his employees in addition to cash wages the reasonable cost or the fair value of the lodging (per week) must be added to the cash wages before the regular rate is determined." 29 C.F.R. § 778.116. Also see United States Department of Labor, Field Assistance Bulletin No. 2015-1, December 17, 2015 ("FAB No. 2015-1"), at p 11.

42.     "[T]he reasonable cost to the employer of furnishing board, lodging, or other facilities (or the fair value thereof) must be included in the employee's [regular rate] of pay for the purposes of computing [overtime] pay." FOH § 30c01(c).

43.     Section 3(m) applies to lodging furnished by the employer as compensation to an employee regardless of whether the employer calculates charges for such lodging as additions to or deductions from wages. 29 C.F.R. § 531.29. In other

words, it is not relevant for purposes of calculating an employee's wages whether the employee has received housing free of charge (additions to cash wages) or has paid rent as a deduction from a paycheck or otherwise (deductions from wages). FAB No. 2015-1, at p 13. Any contribution toward wages the consumer (or the consumer's family or household) has made, including by paying for lodging provided to the employee, may be counted toward the third party employer's wage obligation. Id. at n 13.

**V.     FACTS**

44.     Defendants hired Ms. Nqadolo to work as an HCA on March 22, 2021, and she worked for Defendants until December 15, 2021.

45.     Defendants hired Ms. Mangali to work as an HCA on December 7, 2015, and she has worked for Defendants until the present date as she has not been terminated from her employment.

46.     At all relevant times, Defendants have employed approximately 200-300 HCAs in Connecticut.

47.     Defendants assign their Home Care Assistants, including the Plaintiffs to live on-site with their clients because those clients can, and very frequently do, require assistance at any hour of the day.

48.     The Home Care Assistants, including the Plaintiffs, are responsible for providing non-medical home service(s) /care to individuals/seniors and others who require services/care and resources in their own homes.

49.     The Home Care Assistants including the Plaintiffs provide individualized services/care and resources to seniors, disabled and others so that they may continue to live in their homes and in the community. Home Care may include transportation, house

cleaning, personal hygiene, preparing meals, and other home, health and wellness related activities.

50.     Defendants assign their HCAs non-exempt duties including: activities of daily living, including cooking for and serving breakfast, lunch and dinner to customer; bathing customer as needed; assisting customer change clothing and underwear/diaper during the day and night as needed; helping customer put on and take off customer's clothes every day; sitting with customer and watch customer eat food and watch television and; physically watching over customer at all times and remaining within eye and earshot of customer, including placing an electronic monitoring device in customer's room to monitor to customer at all times including at nighttime; assisting customer with incontinence; assisting customer with personal hygiene; assisting customer with taking medication and; escorting customer for medical appointments.

51.     Defendants assign their HCAs to sleep on-site so that they can help their clients with tasks including using the restroom or turn them over to prevent bed sores when needed.

52.     Defendants assign their HCAs to sleep on-site so that they can help and be with their clients at all times due to the severe medical conditions of the clients, such as Alzheimer's disease, Dementia, Cerebral Palsy, amongst other medical conditions.

53.     Defendants assign their HCAs to provide non-medical Home Care services to Defendants' clients, including for example, general housekeeping companionship personal care, chores, respite care, medical reminder, transportation to appointments and for activities, meal preparation, turning client over in bed and other individual needs of the clients.

54.     Defendants do not allow their live-in HCAs uninterrupted meal times.

55.     Defendants improperly deducted the full 3 hours for meal breaks from each live-in shift worked even though Defendants required the Plaintiffs and other HCAs to work through their meal times by eating all meals with their clients.

56.     Defendants did not qualify to exclude 3-hours for bona fide meal period from the hours Plaintiffs and other live-in HCAs worked. As such, Defendants did not pay Plaintiffs and other live-in HCAs overtime for the exact or all of the hours they worked when they worked though their meal times.

57.     Also, during her employment, Plaintiffs worked during her meal breaks to provide assistance to Defendants' client.

58.     Plaintiff reported to her supervisor that she was working during her meal breaks to provide assistance to Defendants' clients. Defendants improperly excluded the full 21 hours for meal breaks each week although Defendants knew or had constructive knowledge that Plaintiffs worked through their meal  breaks, eating their meals with their clients at all times.

59.     Defendants were aware of that Plaintiffs and all other HCAs were working through their meal breaks because Defendants required Plaintiffs and all HCAs to monitor their clients at all times due to the severe medical conditions of the clients, such as Alzheimer's disease, Dementia, Cerebral Palsy, etc., etc.. But Defendants never took any steps to accurately record all hours worked by Plaintiffs and other HCAs during meal times.

60.     Defendants failed to ensure that they accurately recorded all the work their HCAs, including Plaintiffs, performed during their meal breaks when their meal breaks were interrupted to care for their clients.

61.     Defendants provided Plaintiffs and all HCAs with a time sheet to record their hours worked.

62.     However, Defendants included a boxes on their timesheets for their HCAs to place a check mark if the HCA took meal breaks or if the HCA had 8 hours of sleep or to leave unchecked or unmarked if the HCA did not take their meal breaks or did not have 8 hours of sleep time.

63.     When the HCA left the boxes unchecked or unmarked, indicating that the HCA did not take meal breaks or did not have 8 hours of sleep, Defendants still did not compensate the HCA for these hours worked.

64.     Defendants required their HCAs including the Plaintiffs to monitor their clients at all times and instructed their HCAs including Plaintiffs to have their meals at the same time the client was having his/her meals. Yet, Defendants did not count as hours worked those hours Plaintiffs and other HCAs worked through their meal breaks.

65.     Defendants' HCAs initially wrote on the comment section of the timesheets that they did not have 8  hours of uninterrupted sleep time at nighttime.

66.     Defendants instructed their HCAs to stop writing sleep interruptions on the comment section of the time sheets and to call in the sleep interruptions instead.

67.     The HCAs, including Plaintiffs complied with the instruction to not document sleep interruption but to call in the sleep interruptions, yet Defendants did not document these sleep interruption calls.

68.     Defendant knew that when the HCA including Plaintiffs called in the sleep interruptions, there would be no documentation of these telephone calls which reported interruptions to sleep.

69.     Defendants did not pay the HCA including Plaintiffs for the sleep interruptions when these sleep interruptions were called in.

70.     Plaintiffs and the HCAs stopped calling in these sleep interruptions because Defendants did not pay them even if they called in the sleep interruptions.

71.     For example, during the week of May 9, 2021, to May 15, 2021, Ms. Nqadolo worked as a live-in HCA for all seven days of the week. According to her assigned schedule, she worked seven 24-hour shifts, totaling 168 hours that week. Defendant paid her $1,398.00 for only 91-hours of her work that week.

72.     During this week of May 9, 2021, to May 15, 2021, Defendants did not pay Ms. Nqadolo for any of the 3 hours of meal breaks for each day of that week although Defendants knew Plaintiff worked during her meal breaks.

73.     Defendants were not permitted to exclude all of Ms. Nqadolo's mealtime hours from compensable hours, and should have paid her for the hours she worked during the meal breaks during each live-in shift.

74.     During the first full work week at the beginning of her employment on April 11, 2021, to April 17, 2021, Defendants did not pay Ms. Nqadolo for interruptions to her sleep at night time for each day of that week although Defendants knew Ms. Nqadolo's sleep was interrupted.

75.     Defendants should have paid Ms. Nqadolo for the hours she worked when her sleeping period was interrupted during this week.

14

76.    Defendants were not permitted to exclude all of the 8 hours of sleep time from compensable hours.

77.    For another example, the HCAs with the initials, M.D, O.B.S, and M.L.P. initially were documenting their sleep interruptions in the time sheets but then they soon stopped documenting their sleep interruptions.

78.    The payroll records for these HCAs show that Defendants did not pay them for the documented sleep interruptions and that these HCAs were not paid for the sleep interruptions they called in.

79.    Other HCAs including Ms. Mangali and another HCA with initials, Z.N., have also stated that Defendants instructed them to work through their meal breaks and to only call in their sleep interruptions and that Defendants did not pay them for working through their meal breaks or for their sleep interruptions.

80.    Finally, Defendants furnished food to Plaintiffs and other live-in HCAs but did not provide them with any records of the value of food, therefore, additions to cash wages for meals provided for purposes of computing overtime will be 150 percent of the statutory minimum hourly wage for each day or $10.88 (1.5 x $7.25/hour).

81.    Furthermore, Defendants furnished lodging to Plaintiffs and other live-in HCAs but did not provide any records of the value of lodging, therefore, the additions to cash wages for lodging provided for purposes of computing overtime will be seven and one-half times the statutory minimum hourly wage for each week lodging is furnished, or $54.38 (7.5 x $7.25/hour).

82.    The additions to cash wage for Plaintiffs and other live-in HCAs for food for purposes of overtime pay, is $1.90 per hour [($10.88 x 7) /40 hours].

83.     The additions to cash wage for Plaintiffs and other live-in HCAs for lodging for purposes of overtime pay, is $1.36 per hour [$54.38 /40 hours].

84.     For example, for the pay period, August 15, 2021, to August 21, 2021, Ms. Nqadolo worked the full schedule that week and she was paid 13 hours per shift for 7 shifts, totaling 91 hours. Defendants paid her cash wage of $13.00/hour and overtime premium of $19.50/hour. Defendants paid Ms. Nqadolo a gross pay of $1,514.50. Under the FLSA, Defendants should have added the value of food and lodging, $54.38 + ($10.88/day x 7 days), which is $130.54 to her cash wage $1183 ($13/hr. x 91-hrs), totaling, $1313.54, in order to compute the overtime premium. Ms. Nqadolo's Regular rate should have been $14.43/hr. ($1313.54÷ 91), for the workweek. The overtime premium should have been one and one-half times $14.43, or **$21.64/hour** instead of $19.50/hour which the Defendants paid her. Therefore, Defendants owe Ms. Nqadolo additional wages.

85. Other live-HCAs were subject to the same policy or practice of underpayment for food and lodging as Ms. Nqadolo. As such, Defendants owe other live-in HCAs additional wages.

86. Defendants voluntarily waived their 3(m) credit when they did not deduct the value of food and lodging from the straight pay Defendants paid Ms. Nqadolo and other live-in HCAs during each workweek they worked. Defendants denied Ms. Nqadolo and other live-in HCAs additional wages due when Defendants voluntarily waived their own 3(m) credit allowance. Ms. Nqadolo and other live-in HCAs did not waive their rights to the additional wages due them from the proper computation of the overtime premium for the overtime hours they worked.

87.     As a result, Defendants knowingly and willfully failed to pay Plaintiffs and the other HCAs the full wages that they were due and instead retained those wages for their own use and benefit.

88.     The Defendants and Plaintiffs, through their respective counsel agreed that the statute of limitations will be tolled for the Plaintiffs and the class members from February 10, 2022, until April 29, 2022, so that the parties could attempt to settle this matter pre-litigation. Thus, the statute of limitations does not start to run on the date of filing this complaint but on February 10, 2022. Therefore, the claims of Plaintiffs and the class are for the class period of February 10, 2020, until the present.

89.     Furthermore, as of the date of notice of the class action matter on February 10, 2022, Ms. Nqadolo's personnel file never contained any signed arbitration agreement between her and Defendants. Defendants confirmed through their counsel that all employment agreements between Ms. Nqadolo and Defendants were the same employment agreements other live-in HCAs signed or maintained with the Defendants as of February 10, 2022. As of February 10, 2022, all live-in HCAs, including Plaintiffs never signed any arbitration agreement between them and the Defendants. Upon information and belief, Defendants subsequently signed arbitration agreements with their current employees after the Defendants became aware of this class action matter on February 10, 2022.

## VI.    THE COLLECTIVE ACTION

90.     Plaintiffs bring Counts One and Three on behalf of themselves and all other HCAs Defendants employed during the period of February 10, 2019, until the date of final judgment in this matter who Defendants assigned to "live" with their clients.

91.     Plaintiffs bring this count under 29 U.S.C. § 216(b) of the Fair Labor Standards Act. Plaintiffs and the other live-in HCAs are similarly situated in that they are all subject to Defendants' common plan or practice of requiring them to live on the premises of their clients because they needed assistance at all hours, and failing to pay for working through their meal breaks and for interruption to sleeping period, failing to add the fair value of food and lodging to Plaintiff's and other live-in HCAs' cash wage for the purposes of computing overtime pay and failing to document all hours worked.

## VII.    THE CONNECTICUT RULE 23 CLASS

92.     Plaintiffs bring Counts Two and Four under the Connecticut Minimum Wage Act, C.G.S. §§ 31-58 *et seq*., and Rule 23 of the Federal Rules of Civil Procedure, for themselves and on behalf of a class consisting of all "live-in" HCAs Defendants employed in Connecticut during the period of February 10, 2020, until the date of final judgment in this matter who worked for Defendants.

93.     Class certification for these Connecticut law claims is appropriate under Fed. R. Civ. P. 23 (a) and Fed. R. Civ. P. 23 (b)(3) because all the requirements of the Rules are met.

94.     The class is so numerous that joinder of all members is impracticable. Upon information and belief, Defendants employed 100 or more HCAs who worked at least one 24-hours overnight shift in Connecticut during the past two (2) years.

95.     There are questions of law and fact common to the class, including whether the putative class members worked overtime but were not paid overtime in violation of Connecticut law, whether Defendants failed to pay the class members for working through their meal breaks during each live-in shift, whether Defendants failed to

pay the class members for working when their sleep time was interrupted at nighttime during each live-in shift, whether Defendants recorded and paid the class members for all hours worked during each live-in shift, and whether Defendants failed to add the fair value of food and lodging to Plaintiffs' and other live-in HCAs' cash wage for the purposes of computing overtime pay.

96.     The named Plaintiffs' claims are typical of those of the class members. Plaintiffs' claims encompass the challenged practices and course of conduct of Defendants. Furthermore, Plaintiffs' legal claims are based on the same legal theories as the claims of the putative class members. The legal issues as to which federal and state laws are violated by such conduct apply equally to Plaintiffs and to the class.

97.     The named Plaintiffs will fairly and adequately protect the interests of the class. The Plaintiffs' claims are not antagonistic to those of the putative class and they have hired counsel skilled in the prosecution of class actions.

98.     Common questions of law and fact predominate over questions affecting only individuals, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. This proposed class action under Fed. R. Civ. P. 23 presents few management difficulties, conserves the resources of the parties and the court system, protects the rights of each class member and maximizes recovery to them.

99.     The Plaintiffs originally planned to file this complaint on February 10, 2020. Upon the request of Defendants' counsel and to attempt a pre-litigation settlement of this class action, the parties, through their respective counsel, agreed that the applicable statute of limitations will be tolled as of February 10, 2020. As such, the class period in this class action matter, is from February 10, 2020, to the present date.

### VIII.   LEGAL CLAIMS

**COUNT ONE:**     *Nande Nqadolo and Pamela Mangali, individually and on behalf of others similarly situated v. Care at Home, LLC*: **VIOLATION OF THE FAIR LABOR STANDARDS ACT, 21 U.S.C. Section 201,** *et seq.*

100.   Based on the foregoing, Defendant Care at Home, LLC's conduct in this regard was a willful violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

101.   Plaintiffs and all other similarly situated HCAs who opt into this litigation are entitled to compensation at proper overtime pay for furnishing food and lodging and to compensation for all hours worked including overtime hours worked, liquidated damages, attorneys' fees and court costs.

**COUNT TWO:**     *Nande Nqadolo and Pamela Mangali, individually and on behalf of others similarly situated v. Care at Home, LLC:* **VIOLATION OF THE CONNECTICUT WAGE ACT, C.G.S. Section 31-58,** *et seq.*

102.   Based on the foregoing, Defendant Care at Home, LLC's conduct in this regard was a violation of the Connecticut Wage Act, C.G.S. §§ 31-58, *et seq.*

103.   Accordingly, Plaintiffs and all other HCAs in Connecticut are entitled to compensation at proper overtime pay for furnishing food and lodging and to compensation for all hours worked including overtime hours worked, penalty damages, attorneys' fees and court costs.

**COUNT THREE:**     *Nande Nqadolo and Pamela Mangali, individually and on behalf of others similarly situated v. Suzanne Karp*:  **VIOLATION OF THE FAIR LABOR STARDARDS ACT, 21 U.S.C. Section 201,** *et seq.*

104.   Based on the foregoing, Defendant Suzanne Karp's conduct in this regard was a violation of Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*

105.    As owner of Care at Home, LLC, she is the "ultimate responsible authority" and the cause for these violations.

106.    Defendant Suzanne Karp is liable to Plaintiffs, and all other similarly situated HCAs who opt into this litigation for compensation at proper overtime rate for furnishing food and lodging and for compensation for all hours worked including overtime hours worked, liquidated damages, attorneys' fees and court costs.

**COUNT FOUR:**      *Nande Nqadolo and Pamela Mangali, individually and on behalf of others similarly situated v. Suzanne Karp:* **VIOLATION OF THE CONNECTICUT WAGE ACT, C.G.S. section 31-58,** *et seq.*

107.    Based on the foregoing, Defendant Suzanne Karp's conduct in this regard was a violation of the Connecticut Wage Act, C.G.S. §§ 31-58, *et seq.*

108.    As owner of Care at Home, LLC, she is the "ultimate responsible authority" and the cause for these violations.

109.    Defendant Suzanne Karp is liable to Plaintiffs, and all other HCAs for compensation at proper overtime pay for furnishing food and lodging and for compensation for all hours worked including overtime hours worked, penalty damages, attorneys' fees, and court costs.

**COUNT FIVE:**      *Nande Nqadolo and Pamela Mangali, individually and on behalf of others similarly situated v. Daniel Karp:* **VIOLATION OF THE FAIR LABOR STARDARDS ACT, 21 U.S.C. Section 201,** *et seq.*

110.    Based on the foregoing, Defendant Daniel Karp's conduct in this regard was a violation of Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*

111.    As owner of Care at Home, LLC, he is the "ultimate responsible authority" and the cause for these violations.

112.    Defendant Daniel Karp is liable to Plaintiffs, and all other similarly situated HCAs who opt into this litigation for compensation at proper overtime rate for furnishing food and lodging and for compensation for all hours worked including overtime hours worked, liquidated damages, attorneys' fees and court costs.

**COUNT SIX:** ***Nande Nqadolo and Pamela Mangali, individually and on behalf of others similarly situated v. Daniel Karp:* VIOLATION OF THE CONNECTICUT WAGE ACT, C.G.S. section 31-58, *et seq.***

113.    Based on the foregoing, Defendant Daniel Karp's conduct in this regard was a violation of the Connecticut Wage Act, C.G.S. §§ 31-58, *et seq.*

114.    As owner of Care at Home, LLC, he is the "ultimate responsible authority" and the cause for these violations.

115.    Defendant Daniel Karp is liable to Plaintiffs, and all other HCAs for compensation at proper overtime pay for furnishing food and lodging and for compensation for all hours worked including overtime hours worked, penalty damages, attorneys' fees, and court costs.

## DEMAND FOR RELIEF

Plaintiffs claim:

a.  Designation of this action as a collective action pursuant to the FLSA and prompt issuance of notice pursuant to 29 U.S.C. § 216(b);

b.  Certification of the Connecticut class action pursuant to Fed. R. Civ. P. 23(b)(3) and the appointment of Plaintiffs and her counsel to represent those classes;

c.  An award of unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 216(b);

d.  An award of unpaid overtime wages under the Connecticut Minimum Wage Act, C.G.S. § 31-68;

e.  An award of liquidated damages under the Fair Labor Standards Act, 29 U.S.C. § 216(b);

f.  An award of penalty damages under Connecticut Minimum Wage Act, C.G.S. § 31-68;

g.  Attorneys' fees under the Fair Labor Standards Act, 29 U.S.C. § 216(b);

h.  Attorneys' fees under the Connecticut Minimum Wage Act, C.G.S. § 31-68;

i.  Interests and costs;

j.  Injunctive relief in the form of an order directing Defendants to comply with the Connecticut Minimum Wage Act; and

k.  Such other relief as in law or equity may pertain.

## JURY DEMAND

Plaintiffs demand a trial by jury for all issues so triable.

Nande Nqadolo and Pamela Mangali,
individually and on behalf of other
similarly situated individuals

By: /s// ct05114
Nitor V. Egbarin, ct05114
Law Office of Nitor V. Egbarin, LLC
100 Pearl Street, 14th Floor
Hartford, CT  06103-3007
Tel: (860) 249-7180
Fax: (860) 408-1471
E-mail: NEgbarin@aol.com
Their Attorney