UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NANDE NQADOLO, *et al.*, | ) | CASE NO. 3:22-cv-612 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CARE AT HOME, LLC, *et al.*, | ) | June 6, 2023 |
| *Defendants*. | ) | |

**MEMORANDUM OF DECISION**
**RE: DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE (ECF NO. 27)**

Kari A. Dooley, United States District Judge:

Plaintiffs Nande Nqadolo and Pamela Mangali bring this putative collective and class action against Defendants, Care at Home, LLC, Suzanne Karp, and Daniel Karp (collectively, "Defendants"), on behalf of themselves and similarly situated home care assistants employed by Defendants. Plaintiffs assert in an Amended Complaint[1] two causes of action by way of six counts: (1) a failure to pay overtime in violation of the Fair Labor Standards Act ("FLSA"), 21 U.S.C. §§ 201 *et seq.*, and (2) a failure to pay overtime in violation of the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. § 31-58 *et seq*. Defendants move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), or alternatively to strike certain claims pursuant to Fed. R. Civ. P. 12(f), which Plaintiffs oppose. For the reasons set forth below, Defendants' motion to dismiss is DENIED and Defendants' motion to strike is GRANTED. (ECF No. 27)

---

[1] As noted in the Court's order granting Defendants' Motion to Defer Response to the Amended Complaint, *see* ECF No. 36, after briefing had concluded on Defendants' Motion to Dismiss, Plaintiffs, by agreement of the parties, submitted an Amended Complaint. The Amended Complaint is not a response to the Motion to Dismiss and does not attempt to cure any deficiencies raised by the Motion. Rather, the Amended Complaint simply expands the factual allegations as to the nature and size of the FLSA collective action. The issue raised in the Motion to Dismiss, which would be dispositive of Plaintiffs' claims, is therefore not resolved by the filing of the Amended Complaint. Accordingly, the Court shall consider the motion to dismiss as against the Amended Complaint. *See Pettaway v. Nat'l Recovery Solutions, LLC*, 955 F.3d 299, 303–04 (2d Cir. 2020) ("[W]hen a plaintiff properly amends her complaint after a defendant has filed a motion to dismiss that is still pending, the district court has the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint.").

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "[T]he party moving to strike 'bears a heavy burden' and must show that '(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the issues in the case; and (3) permitting allegations to stand would result in prejudice to the movant.'" *Walczak v. Pratt & Whitney*, No. 3:18-cv-00563 (VAB), 2019 WL 145526, at *2 (D. Conn. Jan. 9, 2019) (quoting *Tucker v. Am. Int'l Grp.*, 936 F. Supp. 2d 1, 16 (D. Conn. 2013)). "Motions to strike under Rule 12(f) are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute. Furthermore, [t]o the extent that Defendants' aim is to avoid unduly inflaming and prejudicing the jury, the court may take into account that the Complaint will not be submitted

to the jury." *Walczak*, 2019 WL 145526, at *2 (citations and internal quotation marks omitted); *see also Gierlinger v. Town of Brant*, No. 13-cv-00370 (AM), 2015 WL 3441125, at *1 (W.D.N.Y. May 28, 2015) ("[B]ecause striking a [part] of a pleading is a drastic remedy . . . motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted.").

**Facts and Procedural History**

The Court accepts as true the allegations in Plaintiffs' Amended Complaint, which are summarized as follows.

Defendants employ live-in domestic service employees, referred to as home care assistants ("HCA") or caregivers, to live with clients, who, due to severe medical conditions, require assistance caring for themselves. Am. Compl. ¶¶ 9, 52. HCAs assist clients with cooking, cleaning, dressing, bathing, eating, medication, personal hygiene, and getting to and from medical appointments. Am. Compl. ¶¶ 9, 50, 53. HCAs work 13-hour shifts with three one-hour meal breaks and an eight-hour sleep break each day. *Id.* Plaintiff Nande Nqadolo worked as an HCA for Defendants from March 22, 2021 to December 15, 2021, Am. Compl. ¶ 17, and Plaintiff Pamela Mangali has worked as an HCA for Defendants since December 7, 2015. Am. Compl. ¶ 18.

Defendants' HCAs are assigned to live on-site because clients frequently require assistance at any time of day. Am. Compl. ¶ 47. HCAs are routinely interrupted during their scheduled meal breaks and sleep breaks, often failing to get five hours of uninterrupted sleep. Am. Compl. ¶¶ 10–11. Defendants failed to record all hours worked by HCAs and accordingly failed to pay them overtime for the hours spent performing work during those interruptions. Am. Compl. ¶ 12. Defendants deducted full meal breaks despite knowing that Plaintiffs worked through meal breaks or ate their meals with the clients and otherwise failed to accurately record the hours worked by Plaintiffs during meal breaks. Am. Compl. ¶¶ 55–59. Defendants also instructed their HCAs not

to document sleep interruptions on their timesheets and instead to call in the interruptions; however, Defendants did not document the sleep interruption calls. Am. Compl. ¶¶ 65–67. Defendants did not pay HCAs for sleep interruptions. Am. Compl. ¶ 69.

Defendants also furnished food and lodging to Plaintiffs but did not provide any record of the value of the food or lodging for the purposes of calculating their regular rate of pay for calculating an overtime rate. Am. Compl. ¶¶ 80–81. However, Defendants did not deduct the value of food and lodging from the straight pay Plaintiffs received. Am. Compl. ¶ 86. Plaintiffs allege that Defendants have improperly withheld overtime that should have been paid to Plaintiffs and other HCAs in violation of state and federal wage and hours laws. Am. Compl. ¶ 13.

**Discussion**

Plaintiffs assert two causes of action by way of six counts against Defendants based on their alleged failure to pay earned overtime. Plaintiffs allege that Defendants violate the FLSA and the CMWA by failing to compensate Plaintiffs and putative class members for interruptions to their meal and sleep breaks[2] and by failing to add the value of food and lodging to their regular rate of pay for purposes of calculating earned but unpaid overtime. Defendants argue that the Amended Complaint should be dismissed because Plaintiffs are domestic service employees and as such are exempt from the overtime requirements of the FLSA (and therefore the CMWA). Defendants further argue that any reference to an enhanced rate of pay for food and lodging provided by Defendants should be stricken because Plaintiffs admitted in their Amended Complaint that Defendants did not reduce or deduct from their pay the value of such food and lodging. The Court addresses each issue in turn.

*Motion to Dismiss*

---

[2] Specifically, Plaintiffs' assert that the hours worked as a result of these interruptions resulted in Plaintiffs' working overtime for which they were not compensated.

4

Sections 206 and 207 of the FLSA establishes minimum wage, maximum hours, and overtime pay requirements. 29 U.S.C. §§ 206–07. Sections 213 and 214 of the FLSA provide various exemptions from these requirements. First, the "companionship exemption" provides that:

> The provisions of sections 206 (except subsection (d) in the case of paragraph (1) of this subsection) and 207 of this title shall not apply with respect to . . . any employee employed on a casual basis in domestic service employment to provide babysitting services or any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)[.]

29 U.S.C. § 213(a)(15). Second, the "live-in exemption" provides that "[t]he provisions of section 207 of this title shall not apply with respect to . . . any employee who is employed in domestic service in a household and who resides in such household." 29 U.S.C. § 213(b)(21). In 1975, the Department of Labor ("DOL") promulgated regulations that permitted third-party employers like Defendants to claim the companionship and live-in exemptions. *See* 29 C.F.R. § 552.109.

In 2015, "given the changes to the home care industry and workforce," the DOL reversed course on the third-party employer issue and promulgated new regulations. *See Home Care Ass'n of America v. Weil*, 799 F.3d 1084, 1089 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 2506 (2016) (citing Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,454, 60,455 (Oct. 1, 2013)). With respect to companionship services, the revised regulation states that "[t]hird party employers of employees engaged in companionship services . . . may not avail themselves of the minimum wage and overtime exemption provided by section [2]13(a)(15)." 29 C.F.R. § 552.109(a) (2015). With respect to live-in workers, the revised regulation states that "[t]hird party employers of employees engaged in live-in domestic service employment . . . may not avail themselves of the overtime exemption provided by section [2]13(b)(21)." *Id.* § 552.109(c). Collectively, the Court refers to these regulations as the 2015 Rule.

Defendants seek dismissal of the Amended Complaint on the ground that the 2015 Rule, which provides that the companionship and live-in exemptions to the FLSA do not apply to third-party employers like Defendants, is invalid. And because the CMWA relies upon the FLSA,[3] if the 2015 Rule is invalid, Plaintiffs claims under the CMWA fail as well. As further discussed below, Defendants contend that because the DOL narrowly read the FLSA exemptions when promulgating the 2015 Rule, the DOL ran afoul of the Supreme Court's decision in *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134 (2018) (*Encino II*), which Defendants argue requires that the DOL give FLSA exemptions a "fair reading." Accordingly, Defendants assert that the 2015 Rule is not entitled to *Chevron* deference and that this Court should independently construe the FLSA as exempting third-party employers from the overtime provisions of the FLSA. In response, Plaintiffs argue that this Court should follow the reasoning of the court in *Aboah v. Fairfield Healthcare Servs., Inc.*, No. 3:20-cv-763 (SVN), 2022 WL 4448876 (D. Conn. Sept. 23, 2022) which rejected a similar if not identical argument.

The Court reviews the 2015 Rule pursuant to the familiar two-step *Chevron* framework. *See Util. Air Regulatory Grp. v. EPA*, 573 U.S. 302, 315 (2014). If "Congress has directly spoken to the precise question at issue," then "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43. But "if the statute is silent or ambiguous with respect to the specific issue," courts analyze "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

As to *Chevron* step one, there is no issue to decide. In *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007), the Supreme Court reviewed the DOL's interpretation of the companionship exemption and held that "the text of the FLSA does not expressly answer the third-

---

[3] Specifically, the CMWA applies to individuals in domestic service employment "as defined in the regulations of the federal Fair Labor Standards Act." Conn. Gen. Stat. § 31-58.

party-employment question" and that there is no "clear answer in the statute's legislative history." *Coke*, 551 U.S. at 168. Thus, the question of "whether to include workers paid by third-parties within the scope of the [exemption's] definitions" is among the "details" that the statute leaves to the "agency to work out." *Id.* at 167. In reaching this conclusion, the Court noted the Secretary of Labor's general authority "to prescribe necessary rules, regulations, and orders with regard to the amendments made by the Act." 1974 Amendments, Pub. L. No. 93–259, § 29(b), 88 Stat. at 76; *see Coke*, 551 U.S. at 165 (citing § 29(b)). Because that grant of authority "provides the Department with the power to fill . . . gaps through rules and regulations," and because the "subject matter of the regulation in question concerns a matter in respect to which the agency is expert," the treatment of third-party employers under the exemption is "entrusted [to] the agency." *Coke*, 551 U.S. at 165. *See also Weil*, 799 F.3d at 1090 (holding that *Coke* foreclosed home care associations' argument that the 2015 Rule fails at *Chevron* step one).

Defendants' argument is aimed at step two of the *Chevron* framework: is the agency rule a reasonable interpretation of the FLSA? *See Chevron*, 467 U.S. at 843 In *Weil*, the United States Court of Appeals for the District of Columbia thoroughly considered the validity of the 2015 Rule and found it to be a reasonable interpretation of the statute that carries the force of law, notwithstanding that it was a departure from past practice. 799 F.3d at 1095–96. The D.C. Circuit held that the DOL's narrow interpretation in the 2015 Rule was consistent with Congress's intent to include within the FLSA's coverage "all employees whose *vocation* is domestic service." *Id.* at 1094 (citing S. Rep. No. 93-690, at 20, and H.R. Rep. No. 93-913, at 33–34, 36). The D.C. Circuit further held that it was reasonable for the DOL to interpret the live-in exemption the same way as the similarly worded companionship exemption. *Id.* Lastly, the D.C. Circuit held that the DOL's resolution of the apparent ambiguity in the statute was fully reasonable in light of changes in the

industry insofar as most home care workers are now professional domestics employed by third-party agencies rather than the "casual" caregivers or "'elder sitters' envisioned by Congress when enacting the exemption." *Id.* (citing 78 Fed. Reg. at 60,482). *Weil* has been cited and relied upon consistently by courts across the country considering the validity of the 2015 Rule. *See, e.g.*, *Kinkead v. Humana at Home, Inc.*, 450 F. Supp. 3d 162, 172–73 (D. Conn. 2020) ("The validity of the new regulation was put into doubt for a time by an adverse decision from a district court in the District of Columbia, but the D.C. Circuit eventually reversed the district court's decision in August 2015."); *Green v. Humana at Home, Inc.*, 380 F. Supp. 3d 400, 403 (S.D.N.Y. 2019) ("[T]he Court of Appeals for the District of Columbia reversed the district court and held that the [2015] rule was valid."); *Scheck v. Maxim Healthcare Servs., Inc.*, 333 F. Supp. 3d 751, 755 (N.D. Ohio 2018) (same); *Aboah*, 2022 WL 4448876 at *5 (same); *Walsh v. Ideal Homecare Agency, LLC*, No. 2:20-cv-732 (DSC), 2021 WL 4437483, at *5 (W.D. Pa. Sept. 28, 2021) (same); *Crane v. J & M Communications, Inc.*, No. 3:16-cv-2855 (ICR), 2017 WL 11694099, at *2 (N.D. Tex. July 6, 2017) (same); *see also Ray v. County of Los Angeles*, 935 F.3d 703 (9th Cir. 2019) (holding that *Weil* reinstated the overtime rule's original effective date of January 1, 2015); *Fezard v. United Cerebral Palsy of Cent. Arkansas*, 809 F.3d 1006, 1009 n.2 (8th Cir. 2016) (citing *Weil* in passing to note that regulations regarding third-party employers in the domestic service employee arena have changed substantially).

Notwithstanding, Defendants contend that the Supreme Court's decision in *Encino II*, which post-dates *Weil*, warrants revisiting the question of whether the 2015 Rule is valid under *Chevron* step two.

In *Encino II*, the Supreme Court reviewed the Ninth Circuit Court of Appeals interpretation of a similar (though different) exemption to the overtime requirements of the FLSA. There, courts

had already concluded that the agency interpretation of the statute was not entitled to *Chevron* deference because the agency had failed to provide any rationale for its change of course. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 220 (2016) (*Encino I*). The Ninth Circuit on remand interpreted the FLSA exemption "narrowly" to afford the greatest protection for the statutes' remedial purpose of protecting workers. *See Encino II*, 138 S. Ct. at 1139–40 (citing *Navarro v. Encino Motorcars, LLC*, 845 F.3d 925, 935 (9th Cir. 2017)). The Supreme Court thereafter rejected the "narrow-construction" principle as a useful guidepost for courts to interpret FLSA exemptions. *Encino II*, 138 S. Ct. at 1142–43. The Supreme Court explained that "[b]ecause the FLSA gives no textual indication that its exemptions should be construed narrowly, there is no reason to give them anything other than a fair (rather than a narrow) interpretation." *Id.* (internal quotation marks omitted). The Supreme Court further reasoned that "[t]he narrow-construction principle relies on the flawed premise that the FLSA pursues its remedial purpose at all costs," when the numerous exemptions of the FLSA "are as much a part of the FLSA's purpose as the overtime-pay requirement." *Id.* (internal quotation marks omitted). As a result, the Supreme Court concluded that courts have "no license to give the exemption anything but a fair reading." *Id.*

Defendants assert that the 2015 Rule is not reasonable under *Chevron* because the DOL afforded these exemptions a "narrow reading" when promulgating the rule, contrary to *Encino II*, and in so doing impermissibly reversed a long-standing agency interpretation of the companionship and live-in exemptions which the Supreme Court had already determined to be reasonable in *Coke*.

The Court disagrees. There is nothing in the Supreme Court's decision in *Encino II* that constrains the manner by which the DOL promulgates rules and regulations under the FLSA. The procedural posture of *Encino II* makes clear that the "fair reading" requirement is a directive to

9

courts in similar situations—those tasked with interpreting the FLSA provisions in the first instance.[4] *See Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 228 (2d Cir. 2018) (noting that, in *Encino II*, the Supreme Court "instruct[ed] that *courts* 'have no license to give the exemption anything but a fair reading'" (emphasis added)); *see also Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 579 (5th Cir. 2018) ("The Supreme Court recently clarified that courts are to give FLSA exemptions 'a fair reading,' as opposed to the narrow interpretation previously espoused by this and other circuits."); *Holt v. City of Battle Creek*, 925 F.3d 905, 909 (6th Cir. 2019) ("In the 2018 case *Encino Motorcars, LLC v. Navarro*, however, the Supreme Court held that courts should apply a 'fair reading' to the [FLSA] exemptions."); *Jordan v. Maxim Healthcare Servs., Inc.*, 950 F.3d 724, 733 (10th Cir. 2020) (same); *Hernandez v. Plastipak Packaging, Inc.*, 15 F.4th 1321, 1329 (11th Cir. 2021) (same). Indeed, it was only after reaching the conclusion that the rule at issue in *Encino II* "was the product of arbitrary and capricious rulemaking that the Court established the 'fair reading' principle in the context of a judicial statutory interpretation." *Walsh*, 2021 WL 4437483, at *5.

Further, Defendants' reliance on *Coke* as supporting the argument that "a new interpretation, which is diametrically opposed to the previous interpretation, cannot also be a 'reasonable' interpretation of the same statute," is misplaced. In *Coke,* after deciding that the companionship and live-in exemptions were silent on the issue of third-party employers, the Supreme Court held that it was the role of the DOL to decide if "all," "some," or "none" of the exemptions applied to employees of third parties. That the DOL took a different and narrower path

---

[4] Defendants cite to post-*Encino II* DOL publications in which the DOL evinces an intent to afford the FLSA a "fair reading" when promulgating rules and regulations. This is not, as argued, an acknowledgment that the 2015 Rule is invalid or that the DOL understands *Encino II* to apply to its rule making function. As discussed, *Encino II* did not involve any step two *Chevron* considerations as the determination not to afford *Chevron* deference had already been made.

when it promulgated the rule in 2015 than it did in 1975 does not render the new rule arbitrary or capricious. And as discussed above, neither does *Encino II.*

Further, as explicitly observed by the Supreme Court in *Coke,* the DOL "may have interpreted these regulations differently at different times in their history. . . . But as long as interpretative changes create no unfair surprise—and the [DOL's] resource to notice-and-comment rulemaking in an attempt to codify its new interpretation . . . makes any such surprise unlikely here—the change in interpretation alone presents no separate ground for disregarding the [DOL's] present interpretation." *Coke*, 551 U.S. at 170–71. These observations were largely reiterated in *Encino I*, when the Court recognized that an agency is "free to change their existing policies as long as they provide a reasoned explanation for the change." 579 U.S. at 221. As discussed above, the DOL provided a reasoned explanation for its change of course: the significant changes to the home care industry and workforce over time. The DOL undertook the notice and comment process, considered input from multiple stakeholders, and ultimately chose a course which narrowed the scope of the exemptions. *See Weil*, 799 F.3d at 1094.

For these reasons, the Court concludes that the 2015 Rule is not an unreasonable interpretation of the FLSA and is therefore entitled to *Chevron* deference in line with the D.C. Circuit's decision in *Weil*, as well as the district court decisions in *Aboah v. Fairfield Healthcare Services, Inc.* and *Walsh v. Ideal Homecare Agency, Inc.* Defendants' motion to dismiss is denied.

*Motion to Strike*

Section 203(m) of the FLSA provides that wages "paid to any employee includes the reasonable cost . . . to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees." 29 U.S.C. § 203(m). The DOL has expounded upon this provision, requiring an

11

employer "who makes deductions from the wages of employees for 'board, lodging, and other facilities' . . . furnished to them by the employer or by an affiliated person, or who furnishes such 'board, lodging, or other facilities' to employees *as an addition to wages*" to maintain and preserve records of those costs. 29 C.F.R. § 516.27 (emphasis added). Section 203(m) applies to situations where board and lodging are "furnished in addition to a stipulated wage" or when charges for board and lodging "are deducted from a stipulated wage." 29 C.F.R. § 531.29.

However, not every provision of food or lodging by an employer must be reduced to a dollar value and treated as a component of an employee's regular wage. *Anderson v. Theriault Tree Harvesting, Inc.*, No. 08-330-B-W (MJK), 2010 WL 323530, at *11–*12 (D. Me. Jan. 20, 2010); *Jefferson v. Beta Operating Company, LLC*, 2020 WL 3628769 3 (C.D. Cal. 2020) ("[O]nly lodging and goods that are 'regarded as part of wages' are subject to the FLSA's requirements."). When determining "whether [an employer] has met the minimum wage and overtime requirements of the Act, the employer may credit himself with the reasonable cost to himself of board, lodging, and other facilities customarily furnished by him to his employees." *See* 29 C.F.R. § 531.27. These credits are oft referred to as 3(m) credits. *See Modise v. CareOne Health Servs., LLC*, No. 3:20-cv-765 (SVN), 2022 WL 16573560, at *10 (D. Conn. Nov. 1, 2022).

Thus, when an employer affirmatively seeks to use furnished board and lodging to offset minimum wage and overtime claims through a § 203(m) credit, the reasonable cost of such board and lodging is considered part of an employee's regular rate of pay.  It is well within an employer's discretion to claim a § 203(m) credit. *See, e.g.*, *Modise*, 2022 WL 16573560, at *9 ("The FLSA *permits* an employer to take a wage credit for a live-in employee's food and housing, subject to certain conditions") (emphasis added); *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 473 (11th Cir. 1982) (§ 203(m) "*allows* employers to include the reasonable cost of servicing meals,

lodging, and other facilities in employee wages for purposes of the FLSA") (emphasis added). Defendants posit that if the employer does not take any credit against the wage and hour requirements for furnished lodging or board and does not deduct from employees' wages to account for lodging and board, the value of such lodging or board is not included in the pay calculation. Plaintiffs do not argue otherwise and simply offer, as a factual matter, that Defendants did take a "partial 3(m) credit."[5]

Whether lodging and board are included in the wage calculation depends on the agreement between the employer and employee. *See Secretary of DOL v. Bristol Excavating, Inc.*, 935 F.3d 122, 129 (3d Cir. 2019) ("[W]hether a payment qualifies as renumeration for employment depends on the employer's and employee's agreement."). When an employer does not take a § 203(m) credit and does not deduct the costs of lodging or board from an employee's pay, there is compelling and conclusive evidence that lodging and board were not an agreed upon part of the compensation package.[6] *Anderson*, 2010 WL 323530, at *11–*12 (where record reflects no adjustment in employee's compensation based on use of employer-provided lodging, such that there was no evidence that "the parties agreed or understood that [employee's] use of the camp would be treated as something that would either reduce or enhance his wages," the mandate in § 203(m) that "the cost of lodging be included in a regular rate calculation when the provision of

---

[5] Plaintiffs' effort to argue an alternative factual basis for their claim supports the inference, consistent with Plaintiffs' brief, that Plaintiffs essentially concede Defendants' legal argument.

[6] The record keeping requirements of the FLSA also support this conclusion. If an employer is going to take a § 203(m) credit or deduct the cost to the employer of lodging or board, he must maintain records which reflect the costs incurred in providing lodging or board. *See* 29 C.F.R. §§ 516.27(a), 552.100(b), 552.100(d). Where neither a credit is taken, nor a deduction to wages is made, no record keeping requirement is implicated. *Id.* Thus, the absence of either retained records or a § 203(m) credit as reflected in Plaintiffs' wages leads to the inescapable conclusion that lodging and board were not part of the compensation package. *Cf. Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 578, 581 (9th Cir. 2010) (when an employer pays an hourly wage in excess of the federal minimum and, as a result, does not take a tip credit, the employer's tip-pooling arrangement is not subject to and does not violate § 203(m)); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 560 (S.D.N.Y. 2013) ("Under this line of authority, an employer's failure to abide by the requirements the FLSA sets for tip-pooling violates the FLSA only if, without the tip credit, the employee's compensation would fall short of the minimum wage. Here, however, each plaintiff attested to making well above the minimum wage without the tip credit.").

lodging is not material to the employment contract and is outside the parties mutual contemplation concerning compensation").

Defendants move to strike all allegations related to a § 203(m) credit or allegations that Plaintiffs' overtime should be calculated using an enhanced regular rate of pay based upon lodging or board that may have been provided. Specifically, Defendants contend that Plaintiffs' own allegations in their Amended Complaint foreclose any claim to an enhanced rate of pay, and therefore, any such claim should be stricken as immaterial. *See* Fed. R. Civ. P. 12(f). In response, Plaintiffs claim that "Defendants took [a] partial 3(m) credit but voluntarily waived the remainder when they did not deduct the full default value of food and lodging . . . from the straight pay Defendants paid" Plaintiffs. P. Mem. in Opp., ECF No. 31 at 24–25. The Court agrees with the Defendants. Plaintiffs' judicial admissions in the Amended Complaint stand in stark and impermissible contrast to the arguments they now advance in opposition to Defendants' motion. In the Amended Complaint Plaintiffs alleged that:

> Defendants *voluntarily waived their 3(m) credit when they did not deduct the value of food and lodging from the straight pay* Defendants paid Ms. Nqadolo and other live-in HCAs during each workweek they worked. Defendants denied Ms. Nqadolo and other live-in HCAs additional wages due when *Defendants voluntarily waived their own 3(m) credit allowance*. Ms. Nqadolo and other live-in HCAs did not waive their rights to additional wages due [to] them from the proper computation of the overtime premium for the overtime hours they worked.

Am. Compl. ¶ 86 (emphasis added).

"A judicial admission is a statement made by a party or its counsel which has the effect of withdrawing a fact from contention and which binds the party making it throughout the course of the proceeding. . . . To constitute a judicial admission, the statement must be one of fact—a legal conclusion does not suffice. . . . Moreover, a statement must have sufficient formality or conclusiveness to be a judicial admission. . . . [The Second Circuit has] explained that a judicial

14

admission must also be deliberate, clear, and unambiguous. . . . [Thus,] in order for a statement to constitute a judicial admission it must not only be a formal statement of fact but must also be intentional, clear, and unambiguous." *In re Motors Liquidation Co.*, 957 F.3d 357, 360–61 (2d Cir. 2020) (citations and internal quotation marks omitted). Allegations made in a complaint are considered judicial admissions. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003).

Ordinarily, if the Court is unable assess the terms of an employment contact between the parties, the scope of the parties' employment agreement would present a question of fact for determination at trial or upon a fully developed summary judgment record. *See e.g.*, *Anderson*, 2010 WL 323530, at *10–*12. However, where, as here, Plaintiffs' judicial admissions in their Amended Complaint resolves the issue, earlier adjudication is permissible. Plaintiffs concede by judicial admission that Defendants did not take any § 203(m) credit against the wage and hour requirements and did not make any deductions from Plaintiffs' wages for food and lodging that Defendants provided. *See* Am. Compl. ¶ 86. Plaintiffs' opposition relies upon inconsistent factual allegations, to wit, that Defendants, in fact, took a "partial 3(m) credit." The admissions in the Amended Complaint foreclose Plaintiffs' inconsistent factual assertion as well as the argument that Plaintiffs' pay for purposes of calculating overtime should be enhanced by the value of the lodging and board they received.[7] *See Anderson,* 2010 WL 323530, at *11. Because Plaintiffs' claims for an enhanced regular rate of pay pursuant to § 203(m) are barred by their own judicial admissions, the Court grants Defendants' motion to strike. *See In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) (striking references to

---

[7] Because the Court concludes that the allegations regarding § 203(m) credit and an enhanced regular rate of pay should be stricken, the Court does not address Defendants' additional argument that the lodging provided to Plaintiffs did not fall within § 203(m) because it was provided primarily for the benefit of the employer.

15

preliminary steps in litigation "as a matter of law, immaterial under Rule 12(f)"); *F.D.I.C. v. Collins*, 920 F. Supp. 30, 33 (D. Conn. 1996) ("Where the defense is insufficient as a matter of law, the defense should be stricken to eliminate the day and unnecessary expense of litigating it at trial").

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is DENIED and Defendants' motion to strike is GRANTED.

**SO ORDERED** at Bridgeport, Connecticut, this 6th day of June 2023.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE