UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NANDE NQADOLO, *et al.*, | ) | CASE NO. 3:22-cv-612 (KAD) |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CARE AT HOME, LLC, *et al.*, | ) | MARCH 28, 2024 |
| *Defendants*. | ) | |

<u>MEMORANDUM OF DECISION</u>
<u>RE: PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION, MOTION FOR RULE 23 CLASS CERTIFICATION, AND MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT (ECF NOS. 38, 40, 43)</u>

Kari A. Dooley, United States District Judge:

Plaintiffs Nande Nqadolo and Pamela Mangali bring this putative collective and class action against Defendants, Care at Home, LLC, Suzanne Karp, and Daniel Karp (collectively, "Defendants"), on behalf of themselves and similarly situated home care assistants employed by Defendants. Plaintiffs assert in an Amended Complaint two causes of action: (1) a failure to pay overtime in violation of the Fair Labor Standards Act ("FLSA"), 21 U.S.C. §§ 201 *et seq.*, and (2) a failure to pay overtime in violation of the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. § 31-58 *et seq.* Plaintiffs allege, individually and on behalf of all others similarly situated, that Defendants required caregivers to work long shifts without uninterrupted meal and sleep breaks and failed to account for food and lodging provided to them when calculating their overtime rates of pay. Plaintiffs have now moved for conditional certification of an FLSA collective with respect to their federal claims and for class certification pursuant to Fed. R. Civ. P. 23 with respect to their state law claims. Plaintiffs also move for leave to file a Second Amended Complaint. Defendants oppose all three motions. For the reasons that follow, Plaintiffs' motions are DENIED. (ECF Nos. 38, 40, 43)

**Allegations and Procedural History**

Defendants employ live-in domestic service employees, referred to as home care assistants or caregivers, to live with clients, who, due to severe medical conditions, require assistance caring for themselves. Am. Compl. at 4 ¶ 9; 11 ¶ 52. Caregivers assist clients with cooking, cleaning, dressing, bathing, eating, medication, personal hygiene, and getting to and from medical appointments. Am. Compl. at 4 ¶ 9; at 11 ¶¶ 50, 53. Caregivers work 13-hour shifts with three one-hour meal breaks and an eight-hour sleep break each day. *Id.* Plaintiff Nande Nqadolo worked as a caregiver for Defendants from March 22, 2021 to December 15, 2021, Am. Compl. at 5 ¶ 17, and Plaintiff Pamela Mangali has worked as a caregiver for Defendants since December 7, 2015. Am. Compl. at 5 ¶ 18.

Defendants' caregivers are assigned to live on-site because clients frequently require assistance at any time of day. Am. Compl. at 10 ¶ 47. Caregivers are routinely interrupted during their scheduled meal breaks, as well as sleep breaks, often failing to get five hours of uninterrupted sleep. Am. Compl. at 4 ¶¶ 10–11. Defendants failed to record all hours worked by caregivers and accordingly failed to pay them overtime for the hours spent performing work during those interruptions. Am. Compl. at 4 ¶ 12. Defendants deducted full meal breaks despite knowing that Plaintiffs worked through meal breaks or ate their meals with the clients and otherwise failed to accurately record the hours worked by Plaintiffs during meal breaks. Am. Compl. at 12 ¶¶ 55–59. Defendants also instructed their caregivers not to document sleep interruptions on their timesheets and instead to call in the interruptions; however, Defendants did not document the sleep interruption calls. Am. Compl. at 13 ¶¶ 65–67. Defendants did not pay caregivers for sleep interruptions. Am. Compl. at 14 ¶ 69.

Plaintiffs allege that in failing to record and compensate meal and sleep interruptions, Defendants have improperly withheld overtime that should have been paid to Plaintiffs and other caregivers in violation of state and federal wage and hours laws. Am. Compl. at 5 ¶ 13.

**Motion for Rule 23 Class Certification**

In their Rule 23 class certification motion, Plaintiffs ask the Court to certify a class with respect to their CMWA claims that includes: "all 'live-in' Home Care Assistances, a/k/a Caregivers ('HCAs') Defendants employed in Connecticut during the period of February 10, 2020, until the date of final judgment in this matter who worked for Defendants." While the class description would align with the allegations in the Amended Complaint, Plaintiffs' proposed bases upon which to certify this class and the issues they propose to litigate as a class were either previously struck by the Court or are not alleged in the Amended Complaint. Accordingly, Plaintiffs' motion for Rule 23 class certification is DENIED. (ECF No. 40)

*Standard of Review*

A party seeking class certification under the Federal Rules of Civil Procedure must establish by a preponderance of the evidence that all of the requirements of Rule 23 have been met. *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). A district court may not certify a class unless it "is satisfied, after a rigorous analysis," that such requirements are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (quoting *Gen. Tel. Co. of Sw v. Falcon*, 457 U.S. 147, 161 (1982)). When assessing whether plaintiffs have met this burden, courts must consider "all of the relevant evidence admitted at the class certification stage." *Betances v. Fischer*, 304 F.R.D. 416, 424 (S.D.N.Y. 2015) (quoting *In re Initial Pub. Offerings Sec. Litig.* ("*In re IPO*"), 471 F.3d 24, 42 (2d Cir. 2006)).

Pursuant to Rule 23(a), a class action may be certified only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Rule 23 also incorporates an "implied requirement of ascertainability" of the class. *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (quoting *In re IPO*, 471 F.3d at 30). In addition to satisfying the four requirements of Rule 23(a), "a class action must qualify under at least one of the '[t]ypes of [c]lass [a]ctions' listed in Rule 23(b)." *Meidl v. Aetna, Inc.*, No. 3:15-cv-1319 (JCH), 2017 WL 1831916, at *2 (D. Conn. May 4, 2017).

As relevant here, Rule 23(b)(3) provides that a class may be certified only where "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The predominance requirement of Rule 23(b)(3) usually presents a "far more demanding" obstacle to certification than the commonality requirement of Rule 23(a)(2). *In re Photochromic Lens Antitrust Litig.*, No. 8:10-cv-00984-T-27EA, 2014 WL 1338605, at *16 (M.D. Fla. Apr. 3, 2014); *accord Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) ("If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." (citing *Amchem*, 521 U.S. at 623–24)).

*Discussion*

In the motion for class certification, Plaintiffs assert that Defendants violated the CMWA in three ways by failing to: (1) provide a regularly scheduled sleep period, (2) provide regularly scheduled meal breaks, and (3) include the value of food and lodging provided to caregivers in

4

their regular rates of pay for purposes of calculating overtime rates. The Court addresses each claimed theory of liability in reserve order.

### Exclusion of Food and Lodging from Overtime Calculations

Plaintiffs assert that Defendants have violated the CMWA by failing to include the value of food and lodging provided to caregivers in their regular rates of pay for purposes of calculating their overtime rates. Specifically, Plaintiffs claim that Defendants' clients provide food and lodging to live-in caregivers and that, by law, Defendants must include the value of such food and lodging in their regular rates of pay when calculating their overtime rates. Plaintiffs contend that, because the caregivers' overtime rates are a multiple of their regular rates of pay, Defendants' exclusion of food and lodging from their regular rates of pay improperly lowered overtime rates.

On June 6, 2023, after the Plaintiffs moved for class certification, the Court struck all allegations that relate to a § 203(m) credit or allegations that Plaintiffs' overtime should be calculated using an enhanced regular rate of pay based upon food or lodging that may have been provided. *See Nqadolo v. Care at Home*, No. 3:22-cv-612 (KAD), 2023 WL 3846309, at *6–*8 (D. Conn. June 6, 2023). The Court determined that employers may, but are not required, to claim a § 203(m) credit for food and lodging they provide to their employees. *Id.* at *7. Plaintiffs' concession and judicial admission that Defendants "voluntarily waived their 3(m) credit when they did not deduct the value of food and lodging from the straight pay Defendants paid" resulted in any such claim being stricken from the case. The Court does not herein revisit this conclusion.[1] Accordingly, this is not a claim for which the proposed class could be certified.

---

[1] Plaintiffs' motion for leave to file a Second Amended Complaint, "made consequent to the Court's ruling granting Defendants' motion to strike the food and lodging claim," attempts to add allegations that it is typical industry practice for clients to furnish food and lodging to their live-in caregivers. (ECF No. 43) The ability of a plaintiff to amend its complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure. *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021). The "good cause" standard in Rule 16(b)(4) applies where a district court has issued "a scheduling order setting a date after which no amendment will be permitted" and the plaintiff requests to amend the complaint after that date. *See id.* Whether good cause exists generally "depends on the diligence of the

5

**Failure to Provide Regularly Scheduled Sleep Periods & Meal Breaks**

Plaintiffs also assert that that Defendants have violated the CMWA by failing to compensate them for regularly scheduled sleep periods and meal breaks. Specifically, Plaintiffs allege that Defendants improperly excluded all meal breaks and sleeping periods from caregivers' 24-hour shifts when calculating their wages because these periods were not "regularly scheduled," that is, the agreement to exclude these hours did not include with specificity when the meal breaks or sleep periods would occur.

Once again, Plaintiffs attempt to move the goal posts. These theories of liability are asserted for the first time in Plaintiffs' motion for class certification. No fair or reasonable reading of the Amended Complaint puts Defendants on notice that Plaintiffs seek overtime compensation for the eleven hours a day set aside for meals or sleep in their employment agreement. To the contrary, the entirety of Plaintiffs' wage claim is that they were not compensated for *interruptions* in their sleep and meal periods. *See* Am. Compl. at 4 ¶¶ 10–13. In fact, Plaintiffs' affirmatively

---

moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). The Court can also consider whether allowing amendment of the complaint at a particular stage of litigation would prejudice the defendant. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). The Court concludes that Plaintiffs have not shown good cause to amend their complaint. For context, in opposition to Defendants' motion to strike the allegations and therefore the claim regarding the use of the value of food and lodging in calculating Plaintiffs' base pay and overtime, Plaintiffs did not respond to Defendants' argument. In failing to do so, as the Court noted in the decision, *see* ECF No. 42 at 13, Plaintiff was deemed to have conceded the argument. Indeed, rather than respond to Defendant's argument that it was within an employer's discretion to claim or not claim a § 203(m) credit, Plaintiffs asserted, for the first time, that Defendants *did* take a partial § 203(m) credit, thereby ostensibly rescuing the base pay issue. The Court found this assertion especially concerning because it stood "in stark and impermissible contrast" to Plaintiffs' allegations, which were deemed a concession by judicial admission. Accordingly, the motion to strike was granted. *Id.* at 15. Plaintiffs did not move for reconsideration of the Court's decision. Instead, they filed a motion to amend the complaint in an apparent effort to revive the base pay calculation issue. But the allegations that it is typical industry practice for clients to furnish food and lodging to their live-in caregivers was information readily available to Plaintiffs at the time of filing their suit, is immaterial to any remaining claims because the Court has struck any allegations regarding Plaintiffs' entitlement to an enhanced rate of pay based on food and lodging that may have been provided, and is deeply prejudicial to Defendants, who have already fully litigated this issue. Indeed, the effort to amend the complaint is a brazen attempt at an end-run around the Court's decision granting the motion to strike. While Plaintiffs argue that courts typically allow a plaintiff to amend a pleading after a ruling to cure identified deficiencies, this was not a situation where the Court identified a curable deficiency. Defendants advanced a legal argument to which Plaintiffs did not respond, Plaintiffs attempted to avoid the legal argument by making factual assertions that were precluded by their own binding allegations, and the Court ruled in favor of the Defendants' legal argument. The motion to file a Second Amended Complaint is therefore DENIED. (ECF No. 43)

acknowledge that they were assigned "to work 13 hour shifts each day, with three one-hour meal breaks and eight hours for sleep each day."

To put a finer point on it, Plaintiffs allege that when a live-in caregiver's sleep period is interrupted, the interruption must be counted "as hours worked" and if the employee cannot get at least five hours of sleep during the "scheduled period," the entire time is working time. Am. Compl. at 2 ¶ 3. Plaintiffs are "routinely interrupted" during mealtimes to assist with clients, Am. Compl. at 4 ¶ 10, and "frequently interrupted" during the night. Am. Compl. at 4 ¶ 11. Plaintiffs "routinely fail[ed] to get five hours of uninterrupted sleep time because of these frequent interruptions." *Id.* Defendants allegedly failed to record all hours worked, even though Plaintiffs were provided "with timesheets to record the interruptions to their meal breaks and sleep times" and Plaintiffs did so record "the times they are interrupted during the meals and sleep time." Am. Compl. at 4 ¶ 12. Defendants knew the caregivers worked "during their meal breaks and sleep times" but "never accurately recorded and [paid] for all the hours Plaintiffs and other [caregivers] worked." *Id.* Defendants assigned Plaintiffs "to sleep on-site so that they can help and be with their clients at all times due to the severe medical conditions of the clients." Am. Compl. at 11 ¶ 51. "Defendants do not allow their live-in [caregivers] uninterrupted meal times." Am. Compl. at 12 ¶ 54. Plaintiffs alleged that Defendants "improperly deducted the full 3 hours for meal breaks from each live-in shift worked even though Defendants required the Plaintiffs and other [caregivers] to work through their meal times by eating all meals with their clients." Am. Compl. at 12 ¶ 55. Defendants provided timesheets to Plaintiffs to record their hours worked, which included boxes to place a check mark if the caregiver took meal breaks or had eight hours of sleep and to leave unmarked if they did not take their meal breaks or did not have eight hours of sleep. Am. Compl. at 13 ¶¶ 61–62. Even when Plaintiffs left the boxes unmarked or unchecked, they allege that

Defendants "still did not compensate the [caregiver] for these hours worked." Am. Compl. at 13 ¶ 63. "Defendants instructed their [caregivers] to stop writing sleep interruptions on the comment section of the time sheets and to call in the sleep interruptions instead," but Defendants still "did not document these sleep interruption calls." Am. Compl. at 13 ¶¶ 66–67. Plaintiffs allege that "Defendants were not permitted to exclude all of the 8 hours of sleep time from compensable hours." Am. Compl. at 15 ¶ 76. Payroll records indicate that "Defendants did not pay them for the documented sleep interruptions and that these [caregivers] were not paid for the sleep interruptions they called in." Am. Compl. at 15 ¶ 78. Plaintiffs allege that there are "questions of law and fact common to the class," including whether "Defendants failed to pay the class members for working through their meal breaks during each live-in shift" and whether "Defendants failed to pay the class members for working when their sleep time was interrupted at nighttime during each live-in shift." Am. Compl. at 19 ¶ 96.

There is only one fair reading of Plaintiffs' allegations: Defendants failed to track sleep and meal interruptions and failed to pay Plaintiffs for the sleep and meal interruptions during which Plaintiffs worked. Plaintiffs cannot now proceed on any theory *other than* that Defendants violated the CMWA *as alleged*.[2]

The Court cannot certify a class to litigate a claim not pled. *See, e.g.*, *In re Canon Cameras*, 237 F.R.D. 357, 358 n.1 (S.D.N.Y. 2006) ("[T]he plaintiffs' instant motion [for class certification] attempts to rely, in part, on factual allegations that were not pled in the Second Amended Complaint. . . . [and therefore] in considering the plaintiffs' instant motion, the Court has

---

[2] The theory that Defendants violated the CMWA by failing to give them "regularly scheduled" mealtimes is also contradicted by Plaintiffs own allegations. Specifically, Plaintiffs allege that they "are routinely interrupted during their *scheduled* mealtimes to assist Defendants' clients." Am. Compl. at 4 ¶ 10 (emphasis added); Am. Compl. at 8 ¶ 36 (same). The reasonable inference from such a judicial admission is that mealtimes were, in fact, *already scheduled*.

8

considered only those factual allegations pled in the Second Amended Complaint."); *Simington v. Lease Finance Group, LLC*, No. 10-cv-6052 (KBF), 2012 WL 6681735 at *1 (S.D.N.Y. Dec. 14, 2012) ("[T]he Court is unable to certify a class as to claims not pled in the operative complaint."); *Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 525, 528–29 (5th Cir. 2008) (district court abused discretion certifying class where plaintiffs' claims were "based on a totally different course of conduct" than those pleaded in the complaint because the "district court's authority to certify a class under Rule 23 does not permit it to structure a class around claims not pled"); *Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546, 560 (C.D. Cal. 2011) ("Class certification is not a time for asserting new legal theories that were not pleaded in the complaint."). *See also King v. Fedcap Rehabilitation Services, Inc.*, No. 20-cv-1784 (VSB), 2022 WL 292914, at *8 (S.D.N.Y. Feb. 1, 2022) (fact that plaintiff never alleged a particular FLSA violation in operative complaint "could be fatal to such a claim" for conditional certification of that violation).

This "whack-a-mole approach" to raising new substantive issues in the face of legitimate arguments from Defendants or identified deficiencies in their proof is simply "not tenable" to adjudicating this putative class action in an efficient manner that balances the rights and interests of both parties. *See Negron v. Cigna Health and Life Insurance Company*, No. 3:16-cv-1702 (JAM), 2021 WL 2010788, at *21 (D. Conn. May 20, 2021) (denying motion for class certification because court could not "simply take plaintiffs' word that other variations do not exist in all the other thousands of plans that fall under the Class and Subclass definitions" and as "far as [the court] can tell, it is holes with moles all the way down"). This attempt is especially egregious as it arises in briefing the motion for class certification and not in the context of request to amend their pleadings, which would have put the Court and Defendants on *some* notice that the theory of this case had drastically changed. And remarkably, the pending motion to amend the complaint does

9

*not* include any effort to alter the theory of liability alleged to include those put forth in the certification briefing. *See Klein v. PetroChina Co. Ltd.*, 644 F. Appx. 13, 15 (2d Cir. 2016) (court did not abuse its discretion by denying leave to file supplemental pleading in putative class action because defendants should not have "to play whack-a-mole with this case" every time new person was indicted because new allegations appear to be duplicative and in light of the interest to "promote the economic and speedy disposition of the controversy between the parties") (internal quotation marks omitted); *Doe v. Paychex, Inc.*, No. 3:17-cv-2031 (VAB), 2019 WL 2027080, at *18 (D. Conn. May 6, 2019) (same).

Plaintiffs do not seek and did not brief class certification on the issues actually contained in the Amended Complaint, *i.e.*, whether Defendants violated the CMWA by failing to compensate them for interruptions to their sleep periods and mealtimes.[3] The motion for class certification of Plaintiffs' state wage law claims is therefore denied.

**Motion for Conditional Certification of Collective Action**

Plaintiffs also seek conditional certification of an FLSA collective that includes: "[a]ll Home Care Assistants, a/k/a Caregivers ('HCA') Defendants employed in Connecticut and in Rhode Island during the period of February 10, 2019, until the date of final judgment in this matter who Defendants assigned to 'live' with Defendants' clients in Connecticut and in Rhode Island." Again, the class description would likely align with the Amended Complaint, if the issues Plaintiffs seek to certify as a conditional opt-in collective action aligned with the allegations in the Amended Complaint. Upon review of the parties' briefing and evidence, the Court finds that Plaintiffs' motion for conditional certification seeks to litigate claims under the FLSA which were either

---

[3] The Court disagrees with Defendants that these claims are therefore abandoned for the named Plaintiffs. These claims are simply not going to be certified as a class and named Plaintiffs may proceed with these claims as pled.

10

previously struck by the Court or are not alleged in the Amended Complaint. Accordingly, Plaintiffs' motion for conditional certification of an FLSA collective is DENIED. (ECF No. 38)

*Standard of Review*

Congress enacted the FLSA to "protect workers and ensure that they are not subjected to working conditions 'detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 243 (2d Cir. 2011) (quoting 29 U.S.C. § 202(a)). In furtherance of this goal, the FLSA imposes numerous "wage and hour" requirements, including an overtime provision that requires employers to pay non-exempt employees time-and-a-half for each hour worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). If an employer violates the FLSA's wage provisions, then the employer is liable for any unpaid compensation. 29 U.S.C. § 216(b).

As relevant to the instant motion, § 16(b) of the FLSA permits employees to bring suit on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). "The unique FLSA collective differs from a Rule 23 class because plaintiffs become members of the collective only after they affirmatively consent to join it." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016); *see also* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). "As a result, unlike a Rule 23 class, a conditionally certified FLSA collective does not acquire an independent legal status." *Glatt*, 811 F.3d at 540.

In *Myers*, the Second Circuit Court of Appeals endorsed a two-step process for certifying collective actions under the FLSA. "At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and

others together were victims of a common policy or plan that violated the law." *Glatt*, 811 F.3d at 540 (citing *Myers*, 624 F.2d at 555). "The 'modest factual showing' cannot be satisfied simply by unsupported assertions, but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (internal citations omitted; internal quotation marks omitted). "At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs." *Glatt*, 811 F.3d at 540 (citing *Myers*, 624 F.2d at 555). "The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers*, 624 F.3d at 555.

The instant decision concerns only step one of the *Myers* analysis. "At this stage, 'the evidentiary standard is lenient.'" *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 130 (E.D.N.Y. 2011) (quoting *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2008)). "Courts have repeatedly stated that [the FLSA's] 'similarly situated' requirement is 'considerably less stringent' than the requirements for class certification under Rule 23. . . . Courts do not require proof of an actual FLSA violation, but rather that a 'factual nexus' exists between the plaintiff's situation and the situation of other potential plaintiffs." *Rodriguez*, 784 F. Supp. 2d at 130 (internal citations & quotation marks omitted). "Generally, courts will conditionally certify a collective action and authorize dissemination of notice upon a 'simple showing' that other employees may also have been subjected to the allegedly improper employment policy. This 'simple showing' requirement can be met by evidence that other employees had similar job requirements and pay provisions." *Lassen v. Hoyt Livery Inc.*, No. 3:13-cv-01529 (JAM), 2014 WL 4638860, at *4 (D. Conn. Sept. 17, 2014) (cleaned up).

"[I]n determining whether the plaintiffs' made the required showing, the court may not weigh the merits of the underlying claims by resolving factual disputes, deciding substantive issues or making credibility determinations." *Gui Zhen Zhu v. Matsu Corp*, 424 F. Supp. 3d 253, 263 (2020) (citations omitted; internal quotation marks omitted). "[A] collective action should be certified as long as the plaintiffs' allegations 'are sufficient on their face' to support certification—even if such allegations conflict with the account asserted by the defendants." *Id.* at 264. Consequently, the court's determination at step one "is typically based on the pleadings, affidavits and declarations submitted by the plaintiffs." *Rodriguez*, 784 F. Supp. 2d at 130 (citation omitted; internal quotation marks omitted) (collecting cases); *accord Gui Zhen Zhu*, 424 F. Supp. 3d at 265 ("Courts routinely grant conditional certification based on the allegations contained in the complaint and affidavits submitted by the named plaintiffs."). The court further draws all inferences from this evidence in favor of the plaintiff. *Gui Zhen Zhu*, 424 F. Supp. 3d at 263.

*Discussion*

As discussed above, Plaintiffs allege that they and other caregivers "are similarly situated in that they are all subject to Defendants' common plan or practice of requiring them to live on the premises of their clients because they needed assistance at all hours, and failing to pay for working through their meal breaks and for interruption to sleeping period." Am. Compl. at 18 ¶ 92.

In the motion for conditional certification of an opt-in class, Plaintiffs assert that Defendants violated the FLSA in two ways: (1) by deducting eight hours of sleep time and three hours of rest breaks from compensable time without providing bona fide meal periods and bona fide regularly scheduled sleep periods as required by 29 C.F.R. § 758.22(a) and (2) by failing to include the value of food and lodging provided to caregivers in their regular rates of pay for

purposes of calculating overtime rates.[4] In response, Defendants argue that conditional certification is not appropriate because 29 C.F.R. § 758.23 governs Defendants' obligations and allows Defendants to exclude sleep time and rest breaks from compensable time by agreement and that any "reasonable agreement" will be acceptable. Defendants then rely upon the written agreement between Defendants and all caregivers that exclude 11 hours from compensable time— 3 hours for meals and 8 hours for sleep. However, as Defendants noted, it "does not appear that Plaintiffs are seeking conditional certification on the basis that live-in caregivers were allegedly not paid for reported interruptions to their sleep time and rest breaks." ECF No. 39 at 21 n.9. The Defendants' observation is well taken and in fact is fatal to Plaintiffs' motion for conditional certification. The Court does not therefore reach the question of whether § 758.22(a), § 758.23, or both apply to Plaintiffs' claims.

Plaintiffs posit that §758.22(a) is applicable when an employee is going to work extended hours and requires "bona fide" and "regularly scheduled" sleep periods and meal breaks. ECF No. 38-1 at 6–7; ECF No. 41 at 3. Plaintiffs assert that because Defendants did not specify when the meals would be eaten or when the sleep would occur, Defendants are not permitted to omit *any* sleep or mealtime from the overtime calculation. As already observed with respect to the motion to certify the state law wage claims, this theory of liability is newly asserted in Plaintiffs' motion for conditional certification. No fair or reasonable reading of the Amended Complaint includes this theory.[5] Plaintiffs' entire claim is that they were not compensated for *interruptions* in their sleep and meal periods. *See* Am. Compl. at 4 ¶¶ 10–13.

---

[4] The Court also concludes that Plaintiffs may not proceed on this claim because the allegations in support of this theory of liability were stricken after the motion for conditional certification was filed.

[5] There is no citation to § 758.22(a) in the Amended Complaint. To the contrary, Plaintiffs cite to § 758.22(b) as implicated insofar as it requires that when a "live-in domestic service" employee's sleep period is "interrupted by a call to duty, the interruption must be counted as hours worked," and further assert "'if the employee cannot get at least 5 hours sleep during the scheduled period the entire time is working time.'" Am. Compl. at 2 ¶ 3.

The Court does not repeat the detailed allegations set forth above demonstrating that the only theory of liability advanced in the Amended Complaint with respect to the FLSA claim is that Defendants did not compensate Plaintiffs for time worked when their meals and sleep was interrupted.

This Court cannot conditionally certify a class to litigate a claim not pled. *See King*, 2022 WL 292914, at *8; *see also In re Canon Cameras*, 237 F.R.D. at 358 n.1; *Simington*, 2012 WL 6681735 at *1; *Anderson*, 554 F.3d at 528–29; *Brown*, 285 F.R.D. at 560. Because Plaintiffs do not seek conditional certification on issues actually contained in the Amended Complaint, *i.e.*, whether Defendants violated the FLSA by failing to compensate them for interruptions to their sleep periods and meal breaks, the motion for conditional certification of an opt-in collective under the FLSA is denied.

**Conclusion**

For the foregoing reasons, Plaintiffs' motion for conditional certification, motion for Rule 23 class certification, and motion for leave to file a Second Amended Complaint are DENIED. (ECF Nos. 38, 40, 43)

**SO ORDERED** at Bridgeport, Connecticut, this 28th day of March 2024.

    */s/ Kari A. Dooley*
    KARI A. DOOLEY
    UNITED STATES DISTRICT JUDGE