## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NANDE NQADOLO and PAMELA MANGALI, *Plaintiffs*, | ) ) ) ) | CASE NO. 3:22-CV-612 (KAD) |
| v. | ) ) | |
| CARE AT HOME, LLC, SUZANNE KARP, and DANIEL KARP, *Defendants*. | ) ) ) | AUGUST 22, 2025 |

### MEMORANDUM OF DECISION
### RE: PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 66); DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF MANGALI (ECF NO. 68); DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF NQADOLO (ECF NO. 69)

Kari A. Dooley, United States District Judge:

Through this civil action, Plaintiffs Nande Nqadolo and Pamela Mangali (collectively, "Plaintiffs") assert that Defendants Care at Home LLC, Suzanne Karp, and Daniel Karp (collectively, "Defendants") improperly withheld overtime that should have been paid to Plaintiffs, in violation of the Fair Labor Standards Act ("FLSA"), 21 U.S.C. §§ 201 *et seq.*, and the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. § 31-58 *et seq.* Now pending before the Court are: (1) Plaintiffs' Motion for Summary Judgment; (2) Defendants' Motion for Summary Judgment as to Plaintiff Nqadolo; and (3) Defendants' Motion for Summary Judgment as to Plaintiff Mangali. For the reasons that follow, Plaintiffs' Motion for Summary Judgment is **DENIED**, Defendants' Motion for Summary Judgment as to Plaintiff Nqadolo is **GRANTED in part and DENIED in part**, and Defendants' Motion for Summary Judgment as to Plaintiff Mangali is **GRANTED in part and DENIED in part**.

**Procedural History**

On October 31, 2022, Plaintiffs filed the operative Amended Complaint, sounding in two causes of action by way of six counts: (1) a failure to pay overtime in violation of the FLSA, and (2) a failure to pay overtime in violation of the CMWA. Am. Compl., ECF No. 35. Plaintiffs were both employed by Defendant Care at Home LLC, as live-in Home Care Assistants ("HCAs"). Plaintiffs alleged, individually and on behalf of all others similarly situated, that Defendants violated the FLSA and the CMWA by failing to compensate Plaintiffs and then-putative class members for interruptions to their meal and sleep breaks, and by failing to add the value of food and lodging to their regular rate of pay for purposes of calculating earned but unpaid overtime. *See id.*

On September 28, 2022, Defendants filed a Motion to Dismiss, as well as an alternative Motion to Strike Plaintiffs' allegations seeking an enhanced rate of pay for food and lodging provided to Plaintiffs.[1] On June 6, 2023, the Court denied Defendants' Motion to Dismiss and granted Defendants' Motion to Strike. In response, on June 20, 2023, Plaintiffs sought leave to file a second amended complaint to assert, *inter alia*, allegations regarding food and lodging provided as a matter of industry practice to rehabilitate the stricken allegations regarding food and lodging specific to Plaintiffs. ECF No. 43. Also pending at the time were Plaintiffs' Motion for Conditional Certification of a Collective Action and Motion for Class Certification. *See* ECF Nos. 38, 40. On March 28, 2024, the Court denied all three of these motions.[2] *See* ECF No. 52. As to Plaintiff's Motion for Leave to Amend, the Court found Plaintiffs' attempt to reassert allegations

---

[1] Though the Amended Complaint was filed subsequent to Defendants' Motion to Dismiss and Motion to Strike, the Court considered those motions as against the Amended Complaint. *See* ECF No. 42.

[2] While Plaintiffs did not seek reconsideration of the Court's decision granting Defendants' Motion to Strike, they did file a motion for reconsideration as to the Court's decision denying leave to amend, which too was subsequently denied. *See* ECF Nos. 53, 57.

that the Court previously struck to be "a brazen attempt at an end-run around the Court's decision granting the motion to strike." *See id.* The Court denied the Motions for Conditional Certification of a Collective Action and for Class Certification, because Plaintiffs were attempting to certify a class or collective action as to claims that were not alleged in the operative complaint. On June 12, 2024, Plaintiffs filed another Motion for Leave to Amend. ECF No. 58. Therein, Plaintiffs sought to "allege the very theory of liability asserted for the first time in the motions for conditional and class certification," namely, that Defendants failed to pay Plaintiffs eleven hours of overtime per day (representing 8 hours of sleep and three hours of meal breaks) because Plaintiffs' sleep and mealtime breaks were not "regularly scheduled" as required by regulation. *See* ECF Nos. 58, 63. As a result, on June 23, 2024, the Court denied Plaintiffs' request and further observed that "it is entirely consistent with Plaintiffs' wasteful strategy throughout this litigation to attempt to relitigate issues that the Court has decided multiple times." *See* ECF No. 63.

On November 7, 2024, the parties filed the instant Motions for Summary Judgment. On November 27, 2024 and November 29, 2024, the parties filed their respective opposition papers, and on December 10, 2024 and December 13, 2024, the parties filed their reply briefs.

**Facts**

The relevant facts are taken from the Amended Complaint, the parties' respective Local Rule 56(a)1 Statements and attached exhibits, as well as the parties' Local Rule 56(a)2 Statements and attached exhibits. All the facts set forth herein are undisputed unless otherwise indicated.[3]

---

[3] Defendants' Local Rule 56(a)2 Statement submitted in response to Plaintiff's Motion for Summary Judgment is improper insofar as it frequently purports to dispute whether Plaintiffs' factual assertions are "material," and relatedly contests the relevance of various factual assertions. Indeed, a Rule 56(a)2 Statement is not a proper vehicle to "object" to the purported materiality of the fact. *See* D. Conn. L. Civ. R. 56(a)2(i) (citing Fed. R. Civ. P. 56(c)). Nevertheless, the Court agrees with Defendants that Plaintiffs are only proceeding on their individual FLSA and CMWA claims, and that any factual assertions pertaining to a class or collective action are indeed immaterial, insofar as the Court has denied Plaintiffs' Motion for Conditional Certification of a Collective Action and Motion for Class Certification.

Defendant Care at Home, LLC is a corporation organized and existing under the laws of the state of Connecticut, with its principal place of business in New London, CT. *See* Am Compl., ECF No. 35 at ¶ 19. Defendant Care at Home employs HCAs within the meaning of the FLSA and CMWA. *See id.* at ¶ 20. Defendants Suzanne and Daniel Karp are members and named principals of Defendant Care at Home, and are responsible for managing, supervising, and directing the day-to-day business affairs and operations of Defendant Care at Home. *Id.* at ¶¶ 21–22, 26–27. Plaintiff Nqadolo is a live-in HCA, who worked for Defendant Care at Home from approximately March 22, 2021 to December 15, 2021. *See* Defs. 56(a)1 (Nqadolo), ECF No. 69-2, at ¶ 1. Plaintiff Mangali is a live-in HCA, who worked for Defendant Care at Home from approximately December 7, 2015 through January 2022. *See* Defs. 56(a)1 (Mangali), ECF No. 68-2, at ¶ 1.

While working as live-in HCAs for Defendant Care at Home, Plaintiffs each agreed that they would be paid for 13 hours per day, which excluded eight hours for sleep time and three hours for meal breaks per day unless they reported otherwise. Defs. 56(a)1 (Nqadolo) at ¶ 2; Defs. 56(a)1 (Mangali) at ¶ 2. On a weekly basis, Plaintiffs were required to submit a written Live-In Overnight Sleep Record ("LIOSR") form as to whether they were able to take at least eight hours of time for sleep and at least three hours of time for breaks each day and report any interruptions to their sleep and meal periods. Defs. 56(a)1 (Nqadolo) at ¶ 6; Defs. 56(a)1 (Mangali) at ¶ 6. Every Sunday, Defendant Care at Home reminded caregivers to submit their LIOSR form, so the company could process payroll properly. Defs. 56(a)1 (Nqadolo) at ¶ 7.

<u>Plaintiff Nqadolo</u>

Plaintiff Nqadolo provided live-in care for three clients during her employment at Care at Home: Ms. Bennet, from April 10, 2021 to October 5, 2021; Mr. Grant from November 17, 2021

to November 28, 2021; and Mr. Chernansky from December 1, 2021 to December 14, 2021. *Id.* at ¶ 11. As a client, Ms. Bennet was known to sleep a lot, and stay in bed for hours and even days at a time. *See id.* at ¶ 12. Indeed, on April 30, 2021, Plaintiff Nqadolo reported that Ms. Bennet "wakes up in the afternoons around noon and evenings about 6/7[pm] to eat and goes back to sleep till the next day." *Id.* at ¶ 13. Plaintiff Nqadolo reiterated Ms. Bennet's sedentary lifestyle in a report to Defendant Care at Home in May 2021, and in October 2021, Ms. Bennet was still sleeping for most of the day. *See id.* at ¶¶ 14–15.

Plaintiff Nqadolo understood that it was important to submit her LIOSR forms to Defendant Care at Home. *Id.* at ¶ 8. Indeed, Plaintiff Nqadolo checked the box for "Slept 8 Hours" on every LIOSR form she submitted to Defendant Care at Home while she was scheduled to work as a live-in HCA. *Id.* at ¶ 9. Nevertheless, Plaintiff Nqadolo claims that she worked for "24 hours per live-in shift."[4] *Id.* at ¶ 34. She also submitted reports of interruptions to her sleep for which she was not compensated. *See* Nqadolo 56(a)2, ECF No. 73 at ¶ 9. According to Plaintiff Nqadolo, these reports of interruptions were submitted through Defendant Care at Home's telephone reporting system, "ClearCare," and arose from occasions: (1) on April 15, 2021, when her client, Ms. Bennet woke up three times and required Plaintiff Nqadolo's assistance in getting her back to bed; (2) on May 11, 2021, when Ms. Bennet was up from 7:00am to 8:00am; (3) on July 16, 2021, when she found Ms. Bennet dressed and awake at 1:30am; and (4) on October 3, 2021, when Ms. Nqadolo generally reported to a Care at Home staff member that Ms. Bennet gets up approximately four times a night. *See* Nqadolo Opp., ECF No. 72 at 3–4.

---

[4] In her opposition to Defendants' Motion for Summary Judgment, Plaintiff Nqadolo does not cite to any specific reported sleep period/rest break interruptions occurring while assisting Mr. Grant or Mr. Chernansky. Moreover, as discussed *infra*, the Court again rejects any notion that Plaintiffs' unpaid wage claims may be premised on allegations that they worked 24-hour shifts. As such, the Court concludes that there is no genuine issue of material fact regarding Plaintiff's claims for the time period she was working with Mr. Grant and Mr. Chernansky. Therefore, whether Plaintiff Nqadolo performed work for which she was not properly compensated while assisting those clients will not be a question for the jury.

As to her meal/rest breaks, Plaintiff Nqadolo never checked the box on her LIOSR form indicating that she had or had not gotten her allotted breaks.[5]  Plaintiff Nqadolo cannot now recall if she did, in fact, have downtime during the day.  Defs. 56(a)1 (Nqadolo) at ¶ 35.

<u>Plaintiff Mangali</u>

Plaintiff Mangali knew that if there were problems with her sleep periods or rest break time, she was supposed to report the problems to Defendant Care at Home.  *See* Defs. 56(a)1 (Mangali) at ¶ 7.  When Plaintiff Mangali submitted sleep records to Defendant Care at Home, she had the opportunity to indicate if she had any problems with her sleep periods or rest breaks.  *Id.* at ¶ 8.  Moreover, Plaintiff Mangali understood it was important to be accurate when reporting that she received her allotted sleep periods and rest breaks.  *Id.* at ¶ 9.  Indeed, no one from Defendant Care at Home ever told Plaintiff Mangali not to report interruptions to her sleep periods or rest breaks.  *Id.* at ¶ 16.  When Plaintiff Mangali wrote "3-1" in the rest break boxes on her LIOSR forms, it meant that she took three one-hour breaks that day.  *Id.* at ¶ 10.  Likewise, when Plaintiff Mangali put check marks in the boxes for sleep time and rest breaks, it also meant that she received at least eight hours of sleep time and three hours of rest breaks.  *Id.* at ¶ 11.

While employed by Defendant Care at Home, Plaintiff Mangali generally had ample time to take breaks, engage in personal activities, and sleep.  *Id.* at ¶ 15.  Throughout all of the LIOSR forms submitted by Plaintiff Mangali, she consistently checked the boxes showing that she received a total of 8 hours in a day of available sleep time and 3 hours in a day of available down time, with limited exceptions.  Defendants assert that these "limited exceptions" occurred on February 29, 2020 (sleep and rest break interruptions), March 7, 2020 (rest break interruption),

---

[5] Defendants assert that the reason for Plaintiff Nqadolo's failure in this regard is because she "couldn't separate what rest break was from downtime."  Plaintiff Nqadolo contends that she left the rest/meal break box unchecked because she was not getting any such breaks.  The Court resolves this purported dispute below.

June 1, 2021 (sleep interruption), June 2, 2021 (sleep interruption), June 3, 2021 (rest break interruption), June 4, 2021 (rest break interruption), June 5, 2021 (rest break interruption), June 21, 2021 (rest break interruption), June 25, 2021 (sleep interruption), August 25, 2021 (sleep interruption), and August 28, 2021 (sleep interruption). *See* Defs. 56(a)1 (Mangali) at ¶¶ 17, 18. Of these reported interruptions, Defendant Care at Home paid Plaintiff Mangali for reported interruptions to her sleep time and rest breaks during the week ending on June 5, 2021, as well as the reported interruption to her sleep time on June 26, 2021. *Id.* at ¶¶ 19–20. Indeed, in June 2021, after Plaintiff Mangali reported to Defendant Care at Home that she was unable to sleep because a client was up during the night, Care at Home paid Plaintiff Mangali for the reported sleep interruption and started scheduling overnight caregivers to assist the client from 11pm to 7am to ensure Plaintiff Mangali could sleep. *Id.* at ¶ 13.

Plaintiff Mangali argues that she submitted additional reports of interruptions for which she was not compensated, beyond those cited by Defendants. *See* Mangali 56(a)2, ECF No. 75 at ¶ 17. According to Plaintiff Mangali, these additional reports of interruptions were submitted through ClearCare, and arise from: (1) Plaintiff Mangali's client coughing at night on March 19, 2020; (2) a client being bedridden and in hospice from May 29, 2020 to June 10, 2020, and therefore needing to be "turned over in bed every 2-3 hours of the live-in shift"; (3) unspecified sleep interruptions from June 27, 2021 to June 30, 2021; and (4) Plaintiff Mangali not getting sleep due to an uncomfortable couch from August 1, 2020 to August 19, 2020. *See* Mangali 56(a)2 at ¶¶ 8, 17–18.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . . ." *Giordano v. Mkt. Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010). In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth "specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). He cannot "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). Nor can he rely on "mere speculation or conjecture as to the true nature of the facts." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quotation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs' Motion for Summary Judgment is a convoluted jumble of sweeping and conclusory allegations supported with citations to evidence but no analysis as to what the cited evidence establishes. Indeed, the legal basis upon which Plaintiffs seek summary judgment is not clear. Plaintiffs appear to seek partial summary judgment on their claims that Defendants violated the FLSA and CMWA by failing to compensate them for time worked during interruptions to their sleep and meal breaks. This would be consistent with the allegations in the Amended Complaint. However, it also appears that Plaintiffs re-assert their claims that they are entitled to compensation for 11 hours per 24-hour shift insofar as the meal and sleep breaks were not "regularly scheduled" as purportedly required. Indeed, according to Plaintiffs, the undisputed facts demonstrate that Defendant Care at Home had an improper policy and practice of excluding 11 hours of meal breaks and sleeping periods from Plaintiffs' 24-hour shifts when calculating their wages, regardless of whether Plaintiffs' meal breaks and/or sleeping periods were interrupted.[6] Plaintiffs further assert that after this litigation was commenced, Defendants fixed this policy and began providing set times for sleep periods and meal breaks. *See* Pl. MSJ, ECF No. 66-1 at 14, 16. In opposing Plaintiffs' Motion for Summary Judgment, Defendants principally argue that Plaintiffs cannot obtain summary judgment on the foregoing claims, insofar as they were not actually alleged in the

---

[6] Plaintiffs seek partial summary judgment "with respect to their claims in counts one and two of the first amended complaint." *See* Pls. MSJ at 1. Notwithstanding that Counts One and Two pertain specifically and only to Defendant Care at Home, Plaintiffs have sought summary judgment on these Counts as to all three Defendants.

Amended Complaint.[7]  To the extent Plaintiffs again assert this theory of liability in their Motion for Summary Judgment, for the fourth time, the Court agrees with Defendants.

In its decision denying Plaintiffs' Motion for Conditional Certification of a Collective Action and Motion for Class Certification, the Court unequivocally found that "[n]o fair or reasonable reading of the Amended Complaint puts Defendants on notice that Plaintiffs seek overtime compensation for the eleven hours a day set aside for meals or sleep in their employment agreement," and "[t]o the contrary, the entirety of Plaintiffs' wage claim is that they were not compensated for *interruptions* in their sleep and meal periods." *Nqadolo v. Care at Home, LLC*, No. 3:22-CV-612 (KAD), 2024 WL 1330761, at *4 (D. Conn. Mar. 28, 2024).  Indeed, the Court rebuked Plaintiffs' "whack-a-mole approach," and concluded, in no uncertain terms, that "Plaintiffs cannot now proceed on any theory *other than* that Defendants violated the CMWA *as alleged*." *Id.* at *5.  Although not clear, to the extent that Plaintiffs seek summary judgment on this theory, the Court will not re-engage with claims that are not properly before it, and that it has previously rejected on **three** separate occasions.  *See* ECF Nos. 52, 57, 63.  "There is only one fair reading of Plaintiffs' allegations: Defendants failed to track sleep and meal *interruptions* and failed to pay Plaintiffs for the sleep and meal interruptions during which Plaintiffs worked." *Nqadolo*, 2024 WL 1330761 at *5; *see, e.g.*, *Marchand v. Simonson*, 16 F. Supp. 3d 97, 109 (D. Conn. 2014) (awarding summary judgment to defendants on a claim for relief not pled in plaintiff's operative complaint) (citing *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (though the Court is

---

[7] Defendants further argue that Plaintiffs are not entitled to summary judgment because: (1) Plaintiffs improperly rely on 29 C.F.R. § 785.22, which is inapplicable to live-in caregivers; (2) Plaintiffs have not identified reported but unpaid interruptions to their meal breaks or sleeping periods; (3) Plaintiffs have, in fact, been paid for all hours worked; and (4) evidence regarding other caregivers is irrelevant.  *See generally* Defs. Opp., ECF No. 70.  Though the Court reaches some of those issues in resolving Defendants' own Motions for Summary Judgment, it is denying Plaintiffs' Motion for Summary Judgment on other grounds and therefore, it need not address all of those arguments herein.

"obligated to draw the most favorable inferences that [plaintiff's] complaint supports, [it] cannot invent factual allegations that he has not pled")).

To the extent Plaintiffs seeks summary judgment on the theory that they worked 24 hours per shift and were therefore entitled to overtime compensation for 11 of those hours, the Court rejects this argument as discussed in connection with the Defendants' Motions for Summary Judgment. *See infra* at 13–14.

To the extent that Plaintiffs seek summary judgment as to specific days and hours worked for which they did not receive compensation due to interruptions to their sleep or meal breaks, Plaintiffs identifies no evidence from which any such assessment might be undertaken. "The Court is not required to search through [a party's] papers to fetter out arguments for him." *United States v. Parker*, No. 22-CR-6203 (MJP), 2023 WL 6519808, at *5 (W.D.N.Y. July 10, 2023), *report and recommendation adopted*, No. 22-CR-6203 (FPG), 2023 WL 6156268 (W.D.N.Y. Sept. 21, 2023) (citing *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones . . . Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.") (internal quotations and citations omitted)); *see also Flores v. Tryon*, No. 15-CV-6623 (EAW), 2017 WL 3705124, at *3 (W.D.N.Y. Aug. 28, 2017) ("[I]t is not this Court's responsibility to raise and make counsel's arguments for them."). The Court recognizes that in opposition to Defendants' Motions for Summary Judgment, Plaintiffs *do* address specific dates with respect to which they seek compensation. Those claims and the evidence cited in support thereof is addressed *infra*, in the decision regarding Defendants' Motions.

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is **DENIED**.

## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

The Court now turns to Defendants' Motions for Summary Judgment.  Defendants argue that: (1) both Plaintiffs have failed to meet their initial burden of proving that they performed work for which they were not properly compensated, under the framework set forth in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946); and (2) even if Plaintiffs have met their initial burden, Defendants have satisfied their ultimate burden by providing evidence that negates the reasonableness of the inferences that might be drawn from Plaintiffs' evidence.  Additionally, as to Plaintiff Mangali specifically, Defendants argue that even if some overtime wages were not paid, there is no genuine dispute that they acted in good faith to ensure compliance with the FLSA and the CMWA, and that as such, Plaintiff Mangali is not entitled to liquidated damages.  In opposing Defendants' Motions for Summary Judgment, Plaintiffs both contend that the undisputed facts demonstrate that their sleeping periods and/or rest breaks were, in fact, interrupted, and that they were not paid for all of those interruptions.[8]  *See* Pls. Opp. (Nqadolo), ECF No. 72 at 3–4; Pls. Opp. (Mangali), ECF No. 74 at 3–5.  The Court agrees in part with Defendants and in part with Plaintiffs.

**Discussion**

A dispute for unpaid wages under the FLSA and CMWA is generally governed by the burden-shifting framework set forth in *Anderson*, whereby "[t]o establish liability under the FLSA on a claim for unpaid [wages], a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work."

---

[8] Plaintiffs' respective opposition briefs also appear to attempt to reassert and/or reinforce the same theory of liability set forth in Plaintiffs' own Motion for Summary Judgment, which this Court has already rejected.  As such, the Court has not considered those arguments in connection with Defendants' Motions for Summary Judgment.  Likewise, Plaintiffs' counsel's "demand" that "Defendants and their counsel be sanction (sic)" for filing their "frivolous" Motions for Summary Judgment is necessarily denied in light of the Court's rulings herein.  *See* Nqadolo Opp. at 5.

*Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 361 (2d Cir. 2011) (citing *Anderson*, 328 U.S. at 686–87); *see also Schoonmaker v. Lawrence Brunoli, Inc.*, 265 Conn. 210, 243 (2003) (applying *Anderson* to a CMWA claim).

In proving that the employee performed unpaid work, at the summary judgment stage, if an employer's records are inaccurate or inadequate, the employee can meet their initial burden by presenting "sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. "Consistent with *Anderson*, an employee's burden in this regard is not high," and indeed, "[i]t is well settled among the district courts of this Circuit . . . that it is possible for a plaintiff to meet this burden through estimates based on his own recollection." *Kuebel*, 643 F.3d at 362 (collecting cases). As to the employer's knowledge requirement—which applies equally to employees who, as here, did not work at the employer's premises, *see Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998)—"an employer's actual or imputed knowledge that an employee is working is a necessary condition to finding the employer suffers or permits that work." *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 287 (2d Cir. 2008).

"If the employee satisfies this initial burden, 'the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence.'" *Aboah v. Fairfield HealthCare Servs., Inc.*, No. 3:20-CV-763 (SVN), 2024 WL 3552413, at *19 (D. Conn. July 26, 2024), *motion to certify appeal denied*, No. 3:20-CV-763 (SVN), 2024 WL 5159161 (D. Conn. Dec. 18, 2024) (citing *Anderson*, 328 U.S. at 687–88). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Anderson*, 328 U.S. at 688.

<u>24-Hour Shifts</u>

As a threshold matter, the Court finds that Defendants are entitled to summary judgment on any contention that Plaintiffs were working for 24 hours per live-in shift and should be awarded damages for any resulting unpaid wages, *i.e.*, 11 hours of overtime. First, any such claim appears to derive from Plaintiffs' defective theory that Defendant Care at Home failed to regularly schedule Plaintiffs' meal breaks and sleep periods—which this Court has repeatedly rejected as not pled in the operative complaint. *See supra* at 9–10. Moreover, to the extent Plaintiffs assert that they worked 24 hours as a factual matter (as opposed to a legal construction because their sleep breaks and meal breaks were not "regularly scheduled"), such a claim is conclusively refuted by the record, which is replete with evidence that Plaintiffs' clients were generally frail, infirm, and sedentary, and that therefore, Plaintiffs had ample time to take breaks, engage in personal activities, and sleep. The Court also agrees with Defendants that a true 24-hour shift on an ongoing basis, is physiologically impossible.[9] As such, the Court has little trouble concluding that no reasonable jury would conclude that Plaintiffs were not paid 11 hours of overtime as a result of working their 24-hour live-in shift. *See, e.g.*, *Aboah*, 2024 WL 3552413 at *20 (claim that plaintiff "worked 24/7" was highly conclusory and unsupported by the record evidence, and therefore did not satisfy her initial burden under *Anderson*). The Court next turns to the claims actually pled — that Defendants failed to pay Plaintiffs for certain *interruptions* to their allotted sleep periods and/or meal breaks. It will address each Plaintiff in turn.

---

[9] To the extent Defendants suggest that legitimate interruptions to Plaintiffs' sleep periods and/or meal breaks need not be compensated if Plaintiffs did not otherwise perform 13 hours of work on the day of the interruption(s), *see* Defs. Reply (Nqadolo), ECF No. 77 at 4–5, such assertions are soundly rejected.

Plaintiff Nqadolo

In seeking summary judgment on Plaintiff Nqadolo's unpaid wages claim, Defendants principally argue that Plaintiff Nqadolo has not demonstrated that she "in fact performed work for which [she was] improperly compensated by producing 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'"  Defs. MSJ (Nqadolo), ECF No. 69, at 9 (citing *Anderson*, 328 U.S. at 687).  More specifically, Defendants argue that "Plaintiff Nqadolo has not identified any specific interruptions which she contends she reported" but for which she was not paid.  *Id.* at 11.  In response, Plaintiff Nqadolo insists that summary judgment is inappropriate because she did in fact report several interruptions in her sleeping periods to Defendants, and her LIOSR forms likewise indicate that she never once received her allotted meal/rest breaks while working as a live-in HCA for Ms. Bennet.  The Court agrees in part with Plaintiff Nqadolo.

*Sleep Interruptions*

Defendants rely heavily on Plaintiff Nqadolo's LIOSR forms, on which Plaintiff Nqadolo checked boxes indicating that she got eight hours of sleep on every scheduled day while working as a live-in HCA for Ms. Bennet.  To be sure, this evidence is compelling; but it is not conclusive. Defendants overlook Plaintiff Nqadolo's ClearCare records, which indicate that on several occasions, Plaintiff Nqadolo *did* report sleep interruptions to Care at Home staff, and the relevant paystubs covering each of those periods, which reflect that Plaintiff Nqadolo was not paid for any such interruptions.  Indeed, the ClearCare records show reported interruptions as occurring on: (1) April 15, 2021, when Ms. Bennet woke up three times and required Plaintiff Nqadolo's assistance in getting her back to bed; (2) July 16, 2021, when Plaintiff Nqadolo found Ms. Bennet dressed and awake at 1:30am; and (3) October 3, 2021, when Plaintiff Nqadolo generally reported to a

Care at Home staff member that Ms. Bennet had been getting up approximately four times a night. The Court concludes that genuine disputes of fact exist as to whether Plaintiff Nqadolo's sleep periods were interrupted on those occasions, and whether Plaintiff Nqadolo was paid for such interruptions.[10]  *Cf. Mmolawa v. Diligent Enters., Inc.*, No. 3:19-CV-300 (VLB), 2020 WL 7190819, at *8 (D. Conn. Dec. 7, 2020) (plaintiff's "unauthenticated recollection[s]," when "contradicted by his contemporaneous recording of work, break and sleep time in his logs," were insufficient to raise a genuine issue of material fact).

On each of those three occasions, Plaintiff Nqadolo reported needing to wake up and assist Ms. Bennet—who was evidently suffering from symptoms of dementia—in the middle of the night.  *See* Pl. 56(a)2 (Nqadolo) at ¶¶ 5, 9 (citing Exhibit 1, ECF No. 73-1 at 11, 14, 28).  In fact, on some of those nights, Plaintiff Nqadolo reported that she was required to help Ms. Bennet back to bed more than once, and often "not without difficulty."  *See id.* (citing Exhibit 1 at 11, 28). Moreover, the relevant ClearCare records from April 15, 2021 and October 3, 2021 reflect that, given the reported interruptions, Care at Home staff was concerned that Plaintiff Nqadolo was not getting enough sleep, and that she looked stressed out and tired.  *See id.*  Additionally, paystubs covering April 15, 2021 and July 16, 2021 (the first two incidents) reflect that Plaintiff Nqadolo was not paid any overtime for these interruptions.  *See id.* (citing Exhibit 4, ECF No. 73-4 at 6, 13). And the paystub for the pay period leading up to October 3, 2021 is not included in the summary judgment record.

---

[10]  Plaintiff also cites the ClearCare records from May 11, 2021, which indicate that Ms. Bennet had been up from 7:00am to 8:00am.  However, when weighed against the checked box on the pertinent LIOSR form, the mere statement that Ms. Bennet was up at 7:00am on May 11, 2021—which itself does not suggest that Plaintiff Nqadolo's sleep was actually disrupted—cannot create a genuine dispute as to whether Plaintiff Nqadolo's sleep period was interrupted on that particular occasion or whether she is entitled to additional compensation as a result.

In light of these ClearCare records and relevant paystubs, a reasonable jury could conclude that on April 15, 2021, July 16, 2021, and certain unspecified dates leading up to October 3, 2021, Plaintiff Nqadolo performed work for which she was not properly compensated, and that Defendant Care at Home had at least constructive knowledge of that work. *See Anderson*, 328 U.S. at 686–87.

*Meal Break Interruptions*

As to Plaintiff Nqadolo's purportedly interrupted (or non-existent) meal breaks, the Court finds that Defendants are entitled to summary judgment. Here, Plaintiff Nqadolo argues solely that Defendants failed to compensate her for interruptions to her allotted meal/rest breaks, as evidenced by her failure to check those boxes on any of her LIOSR forms. Defendants, in seeking summary judgment, anticipate this assertion and argue that Plaintiff Nqadolo never checked the boxes for meal/rest breaks because she "couldn't separate what rest break was [sic] from downtime." *See* Defs. MSJ (Nqadolo), ECF No. 69 at 13 (citing Defs. 56(a)1 (Nqadolo) at ¶ 10). The Court agrees with Defendants. Indeed, regardless of whether Plaintiff Nqadolo understood the difference (if any) between rest breaks and "downtime," or whether she has any precise recollection of receiving downtime during the day, the parties do not dispute that Ms. Bennet was known to sleep a lot, and that she did, in fact, sleep almost all day while Plaintiff Nqadolo worked for her as a live-in HCA. *See* Defs. 56(a)1 (Nqadolo) at ¶¶ 12–15. When weighed against those undisputed facts, it is utterly implausible and indeed, absurd, to suggest that Plaintiff Nqadolo never once received her allotted rest/meal breaks while working as a live-in HCA for Ms. Bennet. Accordingly, the Court finds that Plaintiff Nqadolo has not produced sufficient evidence showing the amount and extent of her purportedly unpaid work during meal/rest breaks as a matter of just and reasonable inference. *See Anderson*, 328 U.S. at 687.

****************************

In light of the foregoing, Defendants' Motion for Summary Judgment as to Plaintiff Nqadolo is **DENIED**, insofar as genuine disputes of fact exist regarding Plaintiff Nqadolo's claim for unpaid wages arising from interruptions to her sleep periods on April 15, 2021 and July 16, 2021, and on or about October 3, 2021.  Defendants' Motion for Summary Judgment as to Plaintiff Nqadolo is **GRANTED** in all other respects.

Plaintiff Mangali

Turning to Plaintiff Mangali, Defendants principally argue that she has not demonstrated that she "in fact performed work for which [she was] improperly compensated by producing 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'"  Defs. MSJ (Mangali), ECF No. 68, at 9 (citing *Anderson*, 328 U.S. at 687).  More specifically, Defendants argue that "[t]he record establishes that Plaintiff Mangali generally reported that she was able to have at least eight hours for sleep and three hours for breaks and, when she reported interruptions, she was paid for them," with the exception of "five isolated instances."  *See id.*  Defendants further contend that because they acted in good faith, Plaintiff Mangali is not entitled to liquidated damages arising out of those "five isolated instances" in connection with either her FLSA or CMWA claims.  *Id.* at 13.  Conversely, Plaintiff Mangali asserts that summary judgment is inappropriate because, as evidenced by her ClearCare records, she did in fact report various interruptions to her sleep periods and rest breaks to Defendants for which she was not compensated.  The Court agrees in part with Plaintiff Mangali.

*Sleep Interruptions*

Defendants generally claim that with certain isolated exceptions, the undisputed facts demonstrate that Plaintiff Mangali received her allotted sleep periods while working as a live-in

HCA, and that she was appropriately compensated for any reported interruptions thereto.  In this regard, Defendants argue that they have met their "ultimate burden of proof by providing evidence to negate the reasonableness of the inference (if any) to be drawn from" Plaintiff Mangali's 24-hour shift claim."[11]  *See* Defs. MSJ (Mangali) at 12 (citing *Anderson*, 328 U.S. at 687–88). Defendants are partially correct, insofar as Plaintiff Mangali's LIOSR forms do reflect that she generally received her allotted sleep periods and rest breaks.  But once again, Defendants' rely almost exclusively on the information contained in those LIOSR forms, which, as discussed above, do not tell the whole story.  Indeed, notwithstanding the Court's rejection of Plaintiffs' 24-hour shift theory, the evidentiary record demonstrates that Plaintiff Mangali reported sleep interruptions through either ClearCare or her LIOSR forms, or both, and that she was not paid for all of those interruptions.  The Court will address each of Plaintiff Mangali's reported sleep interruptions in turn.

As an initial matter, it is undisputed that Plaintiff Mangali received overtime payment from Defendant Care at Home for the reported sleep interruptions occurring on June 1, 2021, June 2, 2021, and June 26, 2021.  *See* Mangali 56(a)2 at ¶¶ 19–20.  It is also undisputed Plaintiff was not paid for additional reported sleep interruptions occurring on February 29, 2020, August 25, 2021, and August 28, 2021, which were each reflected in Plaintiff Mangali's LIOSR forms.  *See id.* at ¶ 17.  Defendants are plainly not entitled to summary judgment as to the foregoing concededly unpaid sleep interruptions.

On March 19, 2020, Plaintiff Mangali reported through ClearCare that her client had been coughing all night.  *See* Mangali Opp., ECF No. 74, at 3 (citing ClearCare Records, Ex. 3, ECF No. 74-3, at 1). While this might give rise to an inference, albeit a speculative one, that Plaintiff

---

[11]  The Court has already rejected any assertion that Plaintiffs are due compensation for 24 hours per shift, either as a legal construct or as a factual matter.  *See supra* at 13–14.

Mangali's sleep was interrupted and required her to attend to her work duties, the pertinent ClearCare records reveal that the reported coughing was related to Defendant Care at Home's concern following the onset of the COVID-19 pandemic, and not to any interruption to Plaintiff Mangali's sleep period. *See* ClearCare Records, Ex. 3, at 1. Accordingly, the Court concludes that Plaintiff Mangali has not met her initial burden under *Anderson*, and that no reasonable jury could find that she is entitled to unpaid overtime arising from sleep interruptions on March 19, 2020.

Plaintiff Mangali's ClearCare records further indicate that from May 29, 2020 through June 10, 2020, her client was bedridden and/or in hospice. Mangali Opp. at 3–4 (citing ClearCare Records, Ex. 3 at 3). According to Plaintiff Mangali, this meant that the client was required to be turned over in bed every 2-3 hours. *Id.* at 4. Here, when weighed against the corresponding LIOSR form—which reflects that Plaintiff Mangali received her allotted eight hours of sleep on May 29, 2020 and May 30, 2020, *see* Defs. MSJ (Mangali), Ex. A-2, ECF No. 68-5, at 12—her broad and conclusory assertions to the contrary cannot create a genuine dispute of material fact as to these two dates.[12] However, as to the remaining dates within this period, there are, curiously, no LIOSR forms in the record concerning Plaintiff Mangali's sleep. And to the extent Plaintiff Mangali reported needing to wake up several times in the middle of the night to assist her bedridden client, it follows that her sleep would be interrupted. Consequently, regarding the period from May 31, 2020 to June 10, 2020, Plaintiff Mangali's own assertions and the ClearCare records *are* sufficient to defeat summary judgment. *See Kuebel*, 643 F.3d at 362 (acknowledging that a plaintiff's initial

---

[12] In evaluating Defendants' Motion for Summary Judgment as to Plaintiff Nqadolo, the Court found a genuine dispute of fact where the pertinent LIOSR form contradicted the corresponding ClearCare records. *See supra* at 14. However, Plaintiff Mangali's circumstances are different. Plaintiff Mangali completed her LIOSR forms with more detail and specificity (often noting the precise number of hours slept), Plaintiff Nqadolo simply checked all the "Slept 8 Hours" boxes on every form she completed, and has suggested that she did so as a matter of course. In this regard, Plaintiff Mangali's LIOSR forms are more reliable, and the Court affords them more weight.

burden under *Anderson* is not high). Indeed, absent any countervailing evidence, the Court concludes that a genuine dispute of fact exists as to whether Plaintiff Mangali performed unpaid work for which she is entitled to compensation during that period.

From August 1, 2020 through August 19, 2020, Plaintiff Mangali reported, via ClearCare, that while working as a live-in HCA for Ms. Trehern, she was unable to get any sleep on the couch, and had resorted to sleeping on the floor. Mangali Opp. at 4 (citing ClearCare Records, Ex. 3 at 4; Mangali Schedule, Exhibit 4, ECF No. 75-4, at 7). Once again, the relevant LIOSR forms are absent from the evidentiary record. In her opposition, Plaintiff Mangali argues that due to the uncomfortable couch, Defendants failed to provide her with adequate sleeping facilities. *See* Mangali Opp. at 8. Defendants contend that Plaintiff Mangali's sleeping arrangement while working for Ms. Trehern was expressly permissible under the relevant FLSA regulations. Defs. Reply (Mangali), ECF No. 78, at 6. But the Court need not resolve these issues, because Plaintiff Mangali is not bringing a claim for unpaid wages arising out of inadequate sleeping facilities. *See Marchand*, 16 F. Supp. 3d at 109. Indeed, the Amended Complaint includes no allegations whatsoever pertaining to inadequate sleeping facilities. Moreover, the pertinent ClearCare records reflect that Plaintiff Mangali's difficulty sleeping was due solely to the uncomfortable couch at Ms. Trehern's residence, and there is otherwise no suggestion in the ClearCare records that Ms. Trehern required any assistance in the middle of the night, and that Plaintiff Mangali's sleep was interrupted as a result. *See* ClearCare Records, Ex. 3 at 4. As the Court has time and time again informed Plaintiffs, this case concerns claims that "Defendants failed to track sleep and meal interruptions and failed to pay Plaintiffs for the sleep and meal interruptions during which Plaintiffs worked." *Nqadolo*, 2024 WL 1330761 at *5. Therefore, whether Ms. Trehern's couch was an adequate sleeping facility will not be a question for the jury in the trial of this matter.

Lastly, Plaintiff Mangali reported through ClearCare that from June 27, 2021 to June 30, 2021, she experienced four successive nighttime interruptions. *See* Mangali Opp. at 5 (citing Exhibit 3 at 12–13). The ClearCare records further reflect Defendant Care at Home's acknowledgment of those successive interruptions, insofar as overnight caregivers were scheduled to assist Plaintiff Mangali, beginning on July 1, 2021. *See id.* And though the evidentiary record does not include the corresponding LIOSR forms for these dates, the LIOSR form for the week ending in June 26, 2021 indicates that Plaintiff Mangali was experiencing sleep interruptions, and indeed, it is undisputed that she received overtime pay for the interruption occurring on June 26, 2021. Accordingly, the Court finds that a genuine dispute of fact exists as to whether Plaintiff Mangali performed overtime work for which she should have been compensated from June 27, 2021 to June 30, 2021.

### Meal Break Interruptions

As to Plaintiff Mangali's rest/meal breaks, the record evidence—through ClearCare records and LIOSR forms—indicates that she reported interruptions on February 29, 2020; March 7, 2020; June 3rd through June 5th, 2021; and June 26, 2021. The parties do not dispute that Plaintiff Mangali was paid for the interruptions occurring on June 3rd through June 5th, 2021. *See* Mangali 56(a)2 at ¶¶ 18–19. Moreover, Defendants acknowledge that Plaintiff Mangali was not paid for the reported interruptions on February 29, 2020, March 7, 2020, and June 26, 2021. *See* Defs. MSJ (Mangali) at 11 n.6 (citing Defs. 56(a)1 (Mangali) at ¶¶ 17–18). Accordingly, Plaintiff has concededly met her burden under *Anderson*, and a reasonable jury could conclude that she is entitled to compensation for the unpaid work she performed during meal/rest break interruptions occurring on February 29, 2020, March 7, 2020, and June 26, 2021.

*Good Faith*

Despite the concession that there are known instances where Plaintiff Mangali was not compensated for interrupted sleep periods and meal/rest breaks, Defendants argue that Plaintiff Mangali is not entitled to recover liquidated damages in connection with her FLSA and CMWA claims, because Defendants acted at all times in good faith.  The Court agrees.  Pursuant to 29 U.S.C. § 260, in any action seeking to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages under the FLSA, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in [29 U.S.C. § 216]."  Likewise, under the CMWA, an employer is not entitled to recover twice the full amount of unpaid wages, "if the employer establishes that the employer had a good faith belief that the underpayment of such wages was in compliance with the law."  Conn. Gen. Stat. § 31-68(a)(2).  Put differently, "if [Defendant Care at Home] is found not to have acted in good faith, it must pay Plaintiff[s] twice the amount of any unpaid wages, as liquidated damages."  *Aboah*, 2024 WL 3552413 at *17.  "The burden is on the employer to show that it acted in good faith in the underpayment of wages."  *Id.* (citing *Mmolawa*, 2020 WL 7190819 at *11).

The CMWA itself "defines 'good faith' as a 'belief' that the employer's action 'was in compliance with the law.'"  *Id.* at *18 (citing Conn. Gen. Stat. § 31-68(a)).  Moreover, Connecticut courts have relied on decisions interpreting the analogous provision in the FLSA, and adopted the "good faith" standard articulated by the Second Circuit.  *Id.*  "[G]ood faith" is "an honest intention to ascertain what the [law] requires and to comply with it."  *Stevens v. Vito's By The Water, LLC*,

HHD-CV-156062506-S, 2017 WL 6045302, at *5 (Conn. Super. Ct. Nov. 9, 2017) (unpublished) (quoting *Reich v. Southern New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)). Good faith requires "more than ignorance of the prevailing law or uncertainty about its development," but rather "active steps to ascertain the dictates of the [law] and then mov[ing] to comply with them." *Id.*

Here, the undisputed facts include that: (1) Defendant Care at Home never told Plaintiff Mangali not to report interruptions to her sleep time or rest breaks; (2) Defendant Care at Home paid for various interruptions for Plaintiff Mangali's sleep period and rest breaks, with only limited exceptions; and (3) Defendant Care at Home scheduled overnight caregivers to assist Plaintiff Mangali in June 2021, after she had reported successive sleep interruptions due to a client being up at night. *See* Mangali 56(a)2 at ¶¶ 13. It is also undisputed that Plaintiff Mangali was required to submit a weekly written record reporting any interruptions to her sleep periods and rest breaks (*i.e.*, the LIOSR form), and that the parties could rely on the accuracy of such records. *Id.* at ¶ 6. Further, the implementation of Defendant Care at Home's LIOSR form procedure was necessarily aimed at ensuring that live-in HCAs received adequate payment consistent with their written employment agreements and applicable wage laws. Given these facts, the Court concludes that Defendant Care at Home's reliance on the LIOSR forms for overtime pay purposes was done in good faith, and any failure to pay for interruptions reported only through ClearCare, but not on an LIOSR, does not negate that good faith.[13] In other words, while Plaintiff Mangali's ClearCare records have, in certain specific instances, created a genuine dispute of material fact as to whether she performed unpaid work, this does not mean that Defendant Care at Home acted in bad faith by

---

[13] Though not related to any purported sleep interruptions, the ClearCare records also generally indicate that Defendant Care at Home was responsive and willing to address any concerns raised by Plaintiff Mangali regarding sleeping facilities, food arrangements, client relations, etc.

relying principally on the LIOSR forms when processing her payroll. Indeed, the good faith standard under the FLSA and CMWA requires only an "honest intention to ascertain what the [law] requires and to comply with it." *See Reich*, 121 F.3d at 71. Defendants have met such a standard, and therefore, Plaintiff Mangali is not entitled to recover liquidated damages in connection with her FLSA and CMWA claims.

***************************

Consistent with the foregoing, Defendants' Motion for Summary Judgment as to Plaintiff Mangali is **DENIED** insofar as genuine disputes of fact exist regarding Plaintiff Mangali's claim for unpaid wages arising from: (a) interruptions to her sleep periods occurring: on February 29, 2020, from May 31, 2020 to June 10, 2020, from June 27, 2021 to June 30, 2021, on August 25, 2021, and on August 28, 2021; and (b) interruptions to her meal/rest break periods occurring on: February 29, 2020, March 7, 2020, and June 26, 2021. Defendants' Motion for Summary Judgment as to Plaintiff Mangali is **GRANTED** in all other respects.

**Conclusion**

For all of the above-discussed reasons, Plaintiffs' Motion for Summary Judgment is **DENIED**, Defendants' Motion for Summary Judgment as to Plaintiff Nqadolo is **GRANTED in part and DENIED in part**, and Defendants' Motion for Summary Judgment as to Plaintiff Mangali is **GRANTED in part and DENIED in part**. This case shall proceed to trial on the following:

**(1)** Plaintiff Nqadolo's claim for unpaid wages arising from interruptions to her sleep periods occurring on April 15, 2021 and July 16, 2021, and on or about October 3, 2021; and

**(2)** Plaintiff Mangali's claim for unpaid wages arising from: (a) interruptions to her sleep periods occurring on February 29, 2020, from May 31, 2020 to June 10, 2020, from June 27, 2021

to June 30, 2021, August 25, 2021, and August 28, 2021; and (b) interruptions to her meal/rest break periods occurring on February 29, 2020, March 7, 2020, and June 26, 2021.[14]

      **SO ORDERED** at Bridgeport, Connecticut, this 22nd day of August 2025.


                     _/s/ Kari A. Dooley_             
                     KARI A. DOOLEY
                     UNITED STATES DISTRICT JUDGE

---

[14] Given the Court's rejection of Defendants' theory that Plaintiffs need not be compensated for reported interruptions if they did not otherwise perform 13 hours of work that day, *see supra* n.10, Defendants appear to have conceded that Plaintiff Mangali should have been paid for each of these reported meal/rest break interruptions, as well as certain of Plaintiff Mangali's reported sleep period interruptions (occurring on February 29 2020, August 25, 2021, and August 28, 2021). Indeed, they have offered to pay Plaintiff Mangali $396.75 in unpaid overtime wages for these reported interruptions, plus interest and reasonable attorney's fees and costs. *See* Defs. MSJ (Mangali) at 11 n.6, 14. Nevertheless, the Court has not herein granted summary judgment in Plaintiff Mangali's favor on any of her claims. As such, the Court leaves the parties to jointly resolve and/or stipulate to judgment on Plaintiff Mangali's claims in light of Defendants' concessions, and the Court's rulings herein.